**SWIFT STOP, INC., et al., Plaintiffs and Appellants,**

v.

**Gerald WIGHT, Defendant and Appellee.**

**No. 910065–CA.**

Court of Appeals of Utah.

Dec. 18, 1992.

John Spencer Snow and Louise T. Knauer, Salt Lake City, for plaintiffs and appellants.

Thomas L. Kay and Paul D. Newman, Salt Lake City, for defendant and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Appellants (Swift Stop) appeal the district court's order granting a motion for summary judgment and denying a motion to amend. We reverse and remand in part the grant of summary judgment and affirm the denial of the motion to amend.

## FACTS

Swift Stop, a Utah Corporation, began operating as a gas station/convenience store in 1981. Swift Stop leased gasoline pumps, signs, and refrigerator cooling equipment from Charter Thrift. In connection with this lease, James Byars, a Swift Stop shareholder, executed a personal guaranty on the debt owed to Charter Thrift. Swift Stop obtained its gasoline from several sources, including Kellerstrass Brothers, Inc. (Kellerstrass). In January of 1983, Kellerstrass obtained a judgment against Swift Stop for $20,361.71. After entry of the judgment, Swift Stop filed a Chapter 11 bankruptcy petition through the law firm of Vlahos, Perkins & Sharp. After the petition was filed, attorney Gerald Wight began working on the case. Swift Stop continued to operate the store during the pendency of the bankruptcy, purchasing gasoline with money borrowed from Citizens Bank. During this time, Wight stipulated that Citizens Bank would be paid for the gasoline purchased.

On May 20, 1983, Wight filed a disclosure statement and plan of reorganization calling for a 25% repayment to Kellerstrass and a 100% repayment to smaller creditors. Kellerstrass opposed the plan and the bankruptcy court denied confirmation of the plan after a hearing on January 30, 1984. On November 29, 1984, the bankruptcy court ordered Swift Stop to have a plan confirmed by the end of February, 1985. Swift Stop allegedly instructed Wight to file a 100% repayment plan for all creditors. Wight did not file the plan. Rather, at a bankruptcy hearing on February 26, 1985, Wight explained to the court that he had not filed a 100% repayment plan because if the plan were approved, it would moot a pending appeal concerning

the 25% repayment plan. In the alternative, Wight orally presented a 100% repayment plan to be paid out over five years. At the hearing, counsel for Kellerstrass stated that Kellerstrass wanted to receive the 100% repayment on a shorter term; however, by affidavit submitted later, he alleged that he was always willing to accept a 100% repayment plan on behalf of Kellerstrass. The bankruptcy judge determined that the evidence presented concerning the 100% repayment plan was "not conclusive as to feasibility" and that the case was "not in any position where there can be a confirmation hearing on the amended plan." Accordingly, the court denied confirmation of the 100% repayment plan.

The dismissal of the 25% plan was affirmed on October 17, 1985, and the bankruptcy was dismissed on October 25, 1985, based upon a motion by Swift Stop. Swift Stop continued to operate the store after the bankruptcy was dismissed but later went out of business.

Swift Stop filed a complaint alleging the following legal malpractice claims arising from Gerald Wight's representation of Swift Stop in the Chapter 11 bankruptcy proceeding: (1) Wight stipulated, without Swift Stop's authorization, that the debt owed to Citizens Bank was nondischargeable; (2) Swift Stop instructed Wight to propose a 100% repayment plan and Wight failed to do so; and (3) Plaintiff James Byars was personally obligated to pay a Swift Stop obligation because of Wight's negligence. After completing his discovery, Wight filed a motion for summary judgment. Swift Stop then filed a motion to amend its complaint. The trial court denied the motion to amend and granted the motion for summary judgment on the grounds that Swift Stop failed to show that Wight's actions proximately caused Swift Stop any harm. Swift Stop appeals both actions.

## STANDARD OF REVIEW

In reviewing the grant of a motion for summary judgment, we review the facts in the light most favorable to the losing party, while giving no deference to the trial court's legal conclusions. *Projects Unlimited, Inc. v. Copper State Thrift & Loan Co.*, 798 P.2d 738, 743 (Utah 1990). A trial court's decision not to allow a party to amend its complaint will not be disturbed on appeal absent an abuse of discretion. *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 92 (Utah 1992); *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983).

## ANALYSIS

### First Cause of Action

Swift Stop contends that Wight, without proper authorization, entered into a stipulation on behalf of Swift Stop providing that the debt owed to Citizens Bank was nondischargeable. The trial court granted summary judgment on this issue, finding that even if Wight were negligent in entering into the stipulation, Swift Stop failed to show Wight's actions caused Swift Stop any harm. We agree.

Even if Swift Stop did not authorize the stipulation, Wight did not cause Swift Stop any harm because the debt to Citizens Bank was an expense incurred by Swift Stop in the day-to-day operation of the business after the commencement of the bankruptcy proceedings. Therefore, the debt was an administrative debt not dischargeable in bankruptcy regardless of the stipulation. *See* 11 U.S.C. §§ 503, 727(b).[1]

Second, Third, and Fourth Causes of Action

Swift Stop's second cause of action asserts that Wight was negligent in failing to prepare and properly submit a 100% repayment plan. Its third cause of action contends Wight breached an oral contract with Swift Stop when Wight failed to submit the 100% repayment plan. Swift Stop's fourth cause of action alleges that because of Wight's negligence, James Byars, one of

---

**1.** Swift Stop also alleges the administrative debt was disputed. However, the allegedly disputed amounts occurred after the stipulation was exe-

cuted. Moreover, even if the amounts were properly disputed, the debt is still one that cannot be discharged in bankruptcy.

Swift Stop's shareholders, was required to pay Swift Stop's obligation to Charter Thrift.

Swift Stop asserts, through its pleadings and affidavits, that its shareholders were ready to invest funds to assure the feasibility of the 100% plan and that the plan would have been approved if properly submitted. Swift Stop further contends that because the plan was not submitted and approved, Swift Stop went out of business, causing the shareholders to suffer losses, such as having to pay debts owed by Swift Stop. However, Wight contends that the plan never would have been approved because Kellerstrass did not approve the plan at the February 26, 1985, hearing and the judge determined the plan was not economically feasible. Wight further alleges that even if the plan had been approved, Swift Stop could not have successfully operated under the plan. The trial court found that "plaintiffs failed to establish a causal connection between the alleged negligence of defendant Wight and any alleged damage suffered by plaintiffs...."

■ Proximate causation is "[t]hat cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred." *Butterfield v. Okubo*, 831 P.2d 97, 106 (Utah 1992) (quoting *State v. Lawson*, 688 P.2d 479, 482 n. 3 (Utah 1984)). "Proximate cause is a factual issue that generally cannot be resolved as a matter of law." *Butterfield*, 831 P.2d at 106; *accord Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985). Because proximate cause is an issue of fact, we refuse to take it from a jury if there is any evidence upon which a reasonable jury could infer causation. *Butterfield*, 831 P.2d at 106.

■ Because the bankruptcy court and creditors might not have accepted the 100% repayment plan and Swift Stop may not have been able to successfully operate after approval of the plan, a jury may determine there was an intervening cause breaking the chain of causation. However, Swift Stop presented evidence suggesting the plan would have been approved if properly

submitted and Swift Stop could have successfully operated under the 100% plan. Although Swift Stop's theory of causation may be strained and is based on disputed facts, "it is the province of the jury to resolve these factual disputes and to determine whether the causation theory is fatally attenuated." *Id.* Therefore, we find that Swift Stop asserted issues of fact as to causation with respect to the claims that Wight was negligent and breached a contract in failing to prepare and properly submit the 100% repayment plan and also with respect to Byars' claim that he was forced to pay Swift Stop's debts because Wight caused Swift Stop to go out of business. Because a jury should resolve these issues, summary judgment was improper.

### Motion to Amend Complaint

■ Swift Stop asserts the trial court erred when it denied its motion to amend the complaint to add additional claims. Rule 15(a) of the Utah Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Utah courts should consider the following factors in determining whether to allow amendment: (1) the timeliness of the motion; (2) the justification for delay; and (3) any resulting prejudice to the responding party. *See Westley v. Farmer's Ins. Exch.*, 663 P.2d 93, 94 (Utah 1983); *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983); *Tripp v. Vaughn*, 746 P.2d 794, 797 (Utah App.1987). Appellate courts uphold a trial court's denial of a motion to amend if the amendment is sought late in the course of litigation, if the movant was aware of the facts underlying the proposed amendment long before its filing, and if there is no adequate explanation for the delay. *Id.*

■ Swift Stop wanted to add the following three claims by amending its complaint: (1) Wight failed to advise Swift Stop of the absolute priority rule; (2) Wight failed to list the individual plaintiffs as creditors of Swift Stop; and (3) Wight failed to renew a lease on the business premises. Swift Stop waited 18 months to file its motion to amend after filing its initial complaint. The bankruptcy petition was dismissed in

October of 1985, two and one-half years before the filing of the original complaint. Therefore, Swift Stop should have known of the first two claims added to its proposed amended complaint when it filed the original complaint. Regarding the lease, Swift Stop lost its occupancy of the leased premises December 15, 1985, over two years before filing the initial complaint and five years before filing the amended complaint. Swift Stop provided no justification for these delays. Further, Wight had already completed his discovery and submitted his motion for summary judgment when Swift Stop submitted its motion to amend. Therefore, we find the trial court did not abuse its discretion in denying the motion to amend.

## CONCLUSION

We reverse the trial court's decision that Swift Stop failed to create an issue of fact as to causation in Swift Stop's second, third, and fourth causes of action raised in its complaint against Wight. We remand these issues to the trial court for further proceedings consistent with this opinion. We affirm the trial court's summary judgment as to Swift Stop's first cause of action and also affirm the trial court's denial of the motion to amend.

BILLINGS and RUSSON, JJ., concur.