**Wesley G. HARLINE, Plaintiff and Appellant,**

v.

**Ronald C. BARKER and Larry Whyte, Defendants and Appellees.**

**No. 920113–CA.**

Court of Appeals of Utah.

May 27, 1993.

Rehearing Denied June 22, 1993.

---

**2.** Utah Code Ann. § 41–3–2(1)(a) reads:

Paul N. Cotro–Manes (argued), Las Vegas, for appellant.

Thomas L. Kay (argued), Mark O. Morris, Snell & Wilmer, Salt Lake City, for appellees.

Before BILLINGS, P.J., and GARFF and GREENWOOD, JJ.

BILLINGS, Presiding Judge:

Dr. Wesley Harline appeals the trial court's grant of summary judgment in his legal malpractice action against Ronald Barker and Larry Whyte (defendants). He also appeals the court's refusal to compel defendants to respond to interrogatories. We reverse and remand.

## FACTS

We recite the facts in the light most favorable to Harline, against whom the summary judgment was entered. *See Swift Stop, Inc. v. Wight,* 845 P.2d 250, 250 (Utah App.1992). In February 1986, Harline filed a Chapter 11 bankruptcy petition with the U.S. Bankruptcy Court for the District of Utah. Prior to filing for bankruptcy, Harline made several gratuitous property transfers to family members. He did not identify these transfers when filing his bankruptcy schedules. Harline also did not include an account he had with Merrill Lynch. Additionally, his bankruptcy schedules failed to note his interest in a profit-sharing plan. Harline received funds from his Merrill Lynch account after his petition was filed. He used these funds for personal expenses without court approval.

On October 29, 1986, after Harline's bankruptcy had been converted to a Chapter 7 proceeding, the bankruptcy court ordered Harline to amend his bankruptcy schedules by November 18, 1986. On November 14, 1986, Bettie Marsh filed a motion to withdraw as counsel for Harline. For purposes of this appeal, defendants concede they represented Harline sometime before November 14, 1986, during the period Harline's bankruptcy schedules should have been amended. Harline never told defendants of any deficiencies in his schedules or of an amendment deadline. Defendants never inquired about outstanding court orders, nor did they consult with former counsel, Bettie Marsh, about the status of Harline's bankruptcy proceedings. In fact, defendants did not look at the docket sheet of Harline's bankruptcy proceedings until the fall of 1987. Thus, defendants were not aware of the court's order to amend Harline's schedules. As a consequence, defendants filed no amendments to Harline's deficient bankruptcy schedules nor did they advise Harline to amend his schedules.

On August 10, 1988, the bankruptcy court denied Harline's discharge in bankruptcy. The court identified Harline's pre-filing gratuitous property transfers, his interest in and use of funds from the Merrill Lynch account, his failure to document his property transactions in his schedules, and his failure to disclose the profit-sharing plan, as the basis for denying the discharge.

On July 10, 1989, Paul Cotro–Manes entered his appearance as Harline's counsel in Harline's bankruptcy proceedings. On April 26, 1990, Harline filed amended bankruptcy schedules which identified his interest in his profit-sharing plan. The bankruptcy court allowed Harline to amend the schedules to include this plan. Harline claimed his interest in this profit-sharing plan should be exempt from creditors. The bankruptcy trustee sued to secure Harline's interest in the profit-sharing plan as an asset of the bankruptcy estate.

On November 9, 1990, the bankruptcy court ruled the money in the profit-sharing plan was not exempt and should be available to Harline's creditors. The U.S. District Court for the District of Utah affirmed the bankruptcy court's decision. The Tenth Circuit reversed and remanded the case, holding the exempt status of Harline's interest in his profit-sharing plan was dependent on unresolved legal and factual issues. *In re Harline,* 950 F.2d 669, 676 (10th Cir.1991), *cert. denied sub nom.*

*Gladwell v. Harline,* —— U.S. ——, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992).

Based on these facts, defendants filed a motion for summary judgment. In the motion defendants claimed (1) they did not breach their duties as attorneys, and (2) they were not the cause of the court's refusal to grant Harline a discharge. The trial court granted summary judgment.

Harline appeals claiming material factual issues exist. Harline argues defendants breached their duty in representing him and that defendants' breach caused the court to deny his discharge.[1]

## STANDARD OF REVIEW

"In reviewing the grant of a motion for summary judgment, we review the facts in the light most favorable to the losing party, while giving no deference to the trial court's legal conclusions." *Swift Stop,* 845 P.2d at 252. " 'Summary judgment is appropriate if the pleadings and all other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Atkinson v. IHC Hospitals, Inc.,* 798 P.2d 733, 734 (Utah 1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991) (quoting *Heglar Ranch, Inc. v. Stillman,* 619 P.2d 1390, 1391 (Utah 1980)); *see also* Utah R.Civ.P. 56(c).

## I. LEGAL MALPRACTICE

■ The elements of legal malpractice include: (1) an attorney-client relationship; (2) a duty of the attorney to the client; (3) a breach of that duty; and (4) damages suffered by the client proximately caused by the attorney's breach of duty. *Williams v. Barber,* 765 P.2d 887, 889 (Utah 1988). *See also Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 727 (Utah App.1990). To avoid summary judgment, Harline must establish some competent evidence to support each element of his legal malpractice claim. *See Robinson v. Intermountain Health Care, Inc.,* 740 P.2d 262, 267 (Utah App.1987).

### A. Breach of Duty

■ Defendants claim they had no duty to amend Harline's bankruptcy schedules under the undisputed facts before the trial court. They argue because Harline originally filed false schedules and did not make them aware of the deficiencies in his schedules nor of the court's order requiring amendment that they had no duty to either amend the schedules or advise Harline to amend the schedules.[2] Harline counters that defendants breached their duty to him by failing to investigate the status of his schedules and the need to amend them.

Once an attorney-client relationship is established, the attorney's duty is to " 'use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of tasks which they undertake.' " *Williams,* 765 P.2d at 889 (quoting *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 825, 364 P.2d 685, 689 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962)). We must decide whether, on the

---

1. In addition, Harline claims there is a factual issue as to whether defendants represented him during the time the schedules should have been amended. Defendants concede they represented Harline during this time for purposes of this appeal. Thus, this factual issue is eliminated.

Furthermore, Harline claims defendants failed to amend his schedules such that his profit-sharing plan could be considered and found exempt. This claim has no merit. The bankruptcy court subsequently allowed the schedules to be amended and the profit-sharing issue was considered on the merits.

2. Defendants for the first time on appeal claim summary judgment was appropriate because Harline failed to produce expert testimony that defendants had breached their standard of care.

*Wycalis v. Guardian Title,* 780 P.2d 821, 826 n. 8 (Utah App.1989), *cert. denied,* 789 P.2d 33 (1990) (acknowledging expert testimony must ordinarily be presented to establish standard of care in cases dealing with duties owed by a particular profession); *see also Brown v. Small,* 251 Mont. 414, 825 P.2d 1209, 1212 (1992) (holding expert testimony is ordinarily required in legal malpractice cases to establish the standard of care). We refuse to consider this issue for the first time on appeal because Harline was never given the opportunity to respond to this issue before the trial court, nor was the trial court given the opportunity to consider it. *See State v. Marshall,* 791 P.2d 880, 887 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990).

facts before the court, defendants breached this duty of care owed to Harline.[3]

Ordinarily, whether a defendant has breached the required standard of care is a question of fact for the jury. Consequently, a motion for summary judgment should be denied where the evidence presents a genuine issue of material fact which, if resolved in favor of the non-moving party, would entitle him to a judgment as a matter of law. A genuine issue of fact exists where, on the basis of the facts in the record, reasonable minds could differ on whether defendant's conduct measures up to the required standard.

*Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982) (citations and footnote omitted).

In *Jackson*, the Utah Supreme Court reversed and remanded a summary judgment in favor of an attorney in a legal malpractice action. *Id.* In that case, the client retained the attorney to prevent a foreclosure sale of her home. At the attorney's suggestion, the client obtained $400 to be used in settling the creditor's $800 judgment. Several days before the sale the client took the $400 to the attorney's office. The attorney told the client the opposing attorney had agreed to stop the foreclosure sale in exchange for the $400. The attorney did nothing further to prevent the foreclosure. The court held there was a genuine issue of material fact as to whether the attorney's conduct amounted to a breach of the standard of care. *Id.*

■ In an earlier legal malpractice case, *Young v. Bridwell*, 20 Utah 2d 332, 437 P.2d 686 (1968), clients sued their attorney for failing to advise the clients of their right to appeal after the trial court had ruled against them. The Utah Supreme Court held that if it was established the trial court had ruled in a manner

manifestly against the general law on the subject ... and this fact was discov-

erable upon reasonable professional research by counsel, upon such a showing a duty conceivably might arise on the part of counsel at least to so inform his client.... However, in this case there is no such established error giving rise to the duty of counsel to advise his client of the right to appeal. Counsel is required to possess the ordinary legal knowledge and skill common to members of his profession, but is not required to know all of the law, nor to second guess the trial judge.

*Id.* at 690. Thus, counsel is required to undertake the research which a reasonable attorney under the circumstances would do. *Id. Accord Williams*, 765 P.2d at 889.

■ In another setting, the supreme court has recognized an attorney can rely on the factual representations of his client. In *Milliner v. Elmer Fox and Co.*, 529 P.2d 806 (Utah 1974), stock purchasers sued the seller's accountant and attorneys to recover the loss of value of the stock. The court dismissed the purchasers' complaint holding they could not recover from the attorneys absent a showing of acts or omissions on the part of the attorneys which amounted to a breach of duty.

In the usual case an attorney acts upon the information furnished by his client, in carrying out his work. As a general rule, an attorney is not required to investigate the truth or falsity of facts and information furnished by his client, and his failure to do so would not be negligence on his part unless facts and circumstances of the particular legal problem would indicate otherwise or his employment would require his investigation.

*Id.* at 808. Thus, absent special circumstances indicating otherwise, attorneys can rely on their client's representations.

■ We now examine the facts before the trial court on summary judgment to determine if the court correctly decided

---

**3.** Defendants argue this case poses a duty question rather than a breach of duty question. Defendants frame the issue as "Did attorneys have a duty to amend the schedules?" We disagree. Duty is a broader question. The duty of defen-

dants was to represent Harline with "competence and diligence." The question is whether they breached that duty by failing to amend the schedules.

that no reasonable fact finder could conclude defendants had breached their duties to Harline. Harline knew of the deficiencies in his schedules and also knew of the order to amend. However, he did not inform defendants of these facts. Defendants did not inquire of their client or prior counsel, nor review the record of the bankruptcy proceedings to determine if there were outstanding court orders which needed attention. Based upon these facts, we conclude that a reasonable juror could find that not doing any investigation shows a lack of diligence and competence on the part of defendants.

The investigation required in this setting falls under the rule discussed in *Milliner*. In *Milliner*, the court said attorneys can rely on the truth of their clients' statements without investigation and not be negligent, unless the circumstances dictate otherwise. Here the circumstances of the recent change of counsel could lead a reasonable fact finder to determine that subsequent counsel should have obtained the docket sheet or met with former counsel to see if there were outstanding orders, or discussed the status of the schedules with their client. Thus, the court's summary judgment cannot be affirmed on the basis that defendants, as a matter of law, did not breach their duty to Harline.

### B. Proximate Cause

Defendants assert that even if reasonable minds could differ as to whether they breached their duty to Harline, their breach did not cause him harm. They contend Harline caused his own damage by filing false schedules at the inception of the bankruptcy proceedings.

■ Proximate cause is an issue of fact. *Swift Stop, Inc. v. Wight*, 845 P.2d 250, 253 (Utah App.1992). Thus, only if there is no evidence upon which a reasonable jury could infer causation, is summary judgment appropriate. *Id.*

■ Proximate cause is "'[t]hat cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred.'" *Id.* (quoting *Butterfield v. Okubo*, 831 P.2d 97, 106 (Utah 1992) (quoting *State v. Lawson*, 688 P.2d 479, 482 n. 3 (Utah 1984))). In a legal malpractice action this standard can be distilled to the following: The client must show that if the attorney had adhered to the ordinary standards of professional competence and had done the act he failed to do or not done the act complained about, the client would have benefited. *See Young v. Bridwell*, 20 Utah 2d 332, 437 P.2d 686, 690 (1968); *Swift Stop*, 845 P.2d at 252. Stated another way, "[i]n a legal malpractice action, proximate cause embraces an assessment of the merits of the underlying cause of action."[4] *Williams*, 765 P.2d at 889.

In *Swift Stop*, this court partially reversed and remanded a summary judgment in a legal malpractice action holding there were material issues of fact regarding the proximate cause of the injury. The attorney was sued for legal malpractice based on his representation of the plaintiff in a Chapter 11 bankruptcy proceeding. The plaintiff asserted several claims of malpractice arising from the representation including: (1) the attorney stipulated, without the plaintiff's authorization, that a debt owed to a bank was not dischargeable in the bankruptcy; and (2) the plaintiff instructed the attorney to propose a 100% repayment plan and the attorney failed to do so.

This court affirmed the trial court's grant of summary judgment on the first issue concluding that the plaintiff failed to show the attorney's stipulation caused the plaintiff harm. We concluded the administrative debt was not dischargeable in bankruptcy thus, the stipulation caused no harm. Therefore, even if the attorney had not done the act complained of the plaintiff would not have prevailed. However, we

---

**4.** Similarly in *Young*, the court states "in order to make out a cause of action against the attorney for failing to advise [the clients] of their right to appeal, it would have to be shown that there was at least a reasonable likelihood of reversing the judgment" and that it would have benefited the clients. *Young*, 437 P.2d at 689.

determined there were material issues of fact as to whether the failure to submit the 100% repayment plan caused harm to the plaintiff. We therefore reversed and remanded on this issue.

Further, in *Dunn v. McKay, Burton, McMurray, & Thurman,* 584 P.2d 894 (Utah 1978), the court found the plaintiff's own actions caused her loss. The plaintiff appealed a directed verdict in favor of her attorney in a malpractice action based on her divorce. The client sued for loss of custody of her children and the cost of legal counsel in Florida. She claimed the attorney failed to mail the summons properly and therefore failed to obtain service over her former husband, a resident of Florida. The court held the loss of custody and the need for retained legal counsel in Florida would have occurred even if the summons had been properly mailed. The court concluded it was the plaintiff's own actions in sending the children to stay with their father in Florida that caused her loss. Thus, the actions of the attorney did not cause her damages.

▬ We must decide whether a reasonable juror could conclude that if defendants had advised Harline to amend his deficient schedules and assisted him in doing so, the bankruptcy court would have granted his discharge. If no reasonable juror could conclude an amendment to the schedules would have helped Harline avoid the denial of his discharge, then summary judgment was appropriate.[5]

The bankruptcy court based its denial of discharge on section 727(a)(2) and (4) of the Bankruptcy Code which provides:

The court shall grant the debtor discharge, unless

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under this title, has transferred, ... or has permitted to be transferred ...

(A) property of the debtor, within one year before the date of filing of the petition; or

(B) property of the estate after the date of filing of the petition;

. . . .

(4) the debtor knowingly or fraudulently, in or in connection with the case:

(A) made a false oath or account.

. . . .

11 U.S.C.A. § 727(a) (1980).

The bankruptcy court found the following prefiling, gratuitous property transfers violated section 727(a)(2)(A): Harline's December 18, 1984 transfer of an Olympus Heights property to family members without consideration; a January 3, 1985 transfer of an Ogden condominium project property to family members without consideration; a January 5, 1985 transfer of Lambs Canyon property to family members without consideration; a January 3, 1985 transfer of an Iowa Street property to family members without consideration.

The court further found Harline violated section 727(a)(2)(B) when he sold his stocks held in a Merrill Lynch account and then used in excess of $38,000 of the proceeds for his personal benefit. Additionally, the court found Harline had violated section

---

**5.** Defendants argue equitable estoppel bars Harline from claiming they caused him harm. The elements of equitable estoppel are:

(i)[A] statement, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, act, or failure to act.

*Ceco Corp. v. Concrete Specialists, Inc.,* 772 P.2d 967, 969–70 (Utah 1989) (citations omitted).

Defendants claim Harline's knowledge of the deficient schedules and his lack of communication of those deficiencies constitute a failure to act and the defendants reasonably relied on that inaction.

Equitable estoppel as a matter of law is not present. Even though Harline may have failed to act by not telling his attorneys about the order to amend, we cannot say as a matter of law that it was reasonable for defendants not to independently review the bankruptcy file. Thus, we cannot say that defendants' reliance upon Harline's omission was reasonable as a matter of law.

727(a)(4)(A) by filing a false oath when he did not properly document the above transfers in his schedules. Finally, the court found he had filed false schedules under section 727(a)(4)(A) by listing an incorrect address and failing to disclose an interest in a partnership.

Ruling from the bench on the section 727(a) violations the bankruptcy judge stated:

> Intent can be inferred from the circumstances. A Court may look to all of the surrounding facts and circumstances and a continuing pattern of wrongful behavior is one indicator of fraudulent intent. Similarly, reckless indifference to the truth is an indication of fraudulent intent under § 727[ (a) ](2). The fact that valuable property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under § 727[ (a) ](2). With these facts that I found and with these principles of law in mind, I conclude as follows. Wesley G. Harline signed the statement of affairs and schedules under oath and he knowingly misstated the place of his residence which was contrary to the testimony at trial. He knowingly misstated the fact he had owned no partnership interest within six years. That he made no transfers within one year of filing and he knowingly misstated his then ownership of $38,000 interest in the Merrill Lynch account.
>
>   . . . .
>
> Wesley G. Harline made a false oath when he signed the statement of affairs, when he signed the oath to schedules A and B and this oath was made knowingly and fraudulently.
>
> *My findings as to intent to hinder, delay or defraud creditors and knowing and fraudulent false oath are made because of the significant number of wrongful acts and the reckless indifference to the truth showed by Wesley G. Harline.*
>
> *The sheer weight of the evidence gives rise to the inescapable conclusion that Wesley G. Harline acted knowingly and*

*with the intent to avoid paying creditors with the intent to conceal property or to place property beyond the reach of creditors.* (Emphasis added).

The question we must focus upon is if defendants had persuaded Harline to amend his schedules to include the prefiling, gratuitous transfers, the Merrill Lynch account, the partnership interest, and correctly state his address, a reasonable juror could conclude the court would have allowed the discharge.

Certainly an amendment would have removed the section 727(a)(4)(A) ground for denial of discharge as the schedules would no longer be false. However, the more difficult question is whether an amendment would allow a reasonable juror to conclude the judge would have changed his section 727(a)(2)(A) and (B) fraudulent property transfer basis for denial of discharge. The bankruptcy court judge stated his delay and defraud findings under section 727(a)(2)(A) and (B) are "because of the significant number of wrongful acts and the reckless indifference to the truth." If Harline had amended the schedules thereby disclosing his questionable dealings, the bankruptcy court judge might have come to a different conclusion regarding Harline's intent to defraud. Thus, we cannot say a reasonable juror could not conclude that Harline may have been granted a discharge had the schedules been amended. We therefore cannot say that the court's summary judgment was proper.

## II. MOTION TO COMPEL DISCOVERY

Harline made a motion to compel and overrule objections to answer certain interrogatories involving the designation of witnesses at trial. The trial court denied the motion on July 1, 1991. The basis for the denial of the motion is unclear. Because the motion may well have been denied based on the pending summary judgment motion, we remand the issue for reconsideration.

## CONCLUSION

The summary judgment must be reversed because a reasonable juror could

conclude that had defendants amended or advised Harline to amend his deficient schedules the bankruptcy court would have granted his discharge. Further, because we cannot determine the basis for the court's denial of the motion to compel, we remand the issue for reconsideration in light of our reversal of the summary judgment.

GARFF and GREENWOOD, JJ., concur.