772 P.2d 1140

**Keith F. STANDAGE, Plaintiff/Appellant,**

v.

**PLANNED INVESTMENT CORPORATION, an Arizona corporation; Tom Stapley and Associates, an Arizona corporation; and Cheryl Standage, Defendants/Appellees.**

**PLANNED INVESTMENT CORPORATION, an Arizona corporation, Counterclaimant/Appellee,**

v.

**Keith F. STANDAGE, Counterdefendant/Appellant.**

**No. 2 CA–CV 88–0309.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 27, 1988.

Review Denied May 23, 1989.

288

Gove L. Allen, Mesa, for plaintiff/counterdefendant/appellant.

Murphy & Posner by Terry L. Rakow, Phoenix, for defendants/counterclaimant/appellees.

## OPINION

FERNANDEZ, Judge.

This case is but one of a series of lawsuits that have ensued from the management of a shopping center. We affirm on all issues except the award of attorney's fees which we remand for a new determination. In order to understand the issues presented, it is necessary to recite some historical background.

In 1963, Hugh Lawson formed Planned Investment Corporation (PIC), an Arizona corporation. He retained ownership of 52% of the stock until his death in July 1979 when his interest passed to his wife Gladys Lawson. Hugh Lawson gave 24% of the PIC stock to his son Roger Lawson and 24% to his daughter Cheryl Standage. PIC's principal asset is a 13–unit shopping center located in Mesa. Cheryl Standage's husband Keith F. Standage managed the center pursuant to a written agreement

from 1964 through 1969. After that he continued as manager without a written agreement until 1984.

Keith Standage was also the secretary of PIC from its inception until August 5, 1982. After Hugh Lawson's death, Standage negotiated with Gladys Lawson to purchase her interest in the shopping center. Before completion of the sale, Cheryl Standage filed for divorce, and the sale negotiations terminated. In the divorce action, Cheryl was awarded her 24% of the PIC stock as her sole and separate property. *Standage v. Standage*, 147 Ariz. 473, 711 P.2d 612 (App.1985). In November 1983, PIC obtained a court order removing Standage as manager of the shopping center effective February 14, 1984.

After Standage was removed, PIC hired Tom Stapley and Associates, an independent property management company, to manage the shopping center. When Stapley failed to receive rent from Ivory Crow who operates Crow Cleaners, a dry cleaning establishment in the shopping center, it gave notice to terminate Crow's month-to-month tenancy. On June 21, 1984, PIC filed a forcible detainer action against Crow which was later dismissed.

The present action was initially filed by Crow alone. Later Standage joined Crow as a party plaintiff in an amended complaint which alleged that both Cheryl Standage and Stapley intentionally interfered with the business relationship between Crow, Standage and PIC, that PIC breached an agreement with Crow and Standage and that PIC had racially discriminated against Crow. In the amended complaint, Standage alleged that he had a lease with PIC for Crow Cleaners. PIC, Cheryl Standage and Stapley answered, and PIC counterclaimed seeking a declaratory judgment that two agreements under which Standage was claiming rights to lease Crow Cleaners were invalid and unenforceable, and alleging breach of fiduciary duty and breach of contract against Standage and forcible detainer and conversion against Crow. The two agreements involved in the counterclaim were a lease dated July 1, 1976, which purportedly leased the dry cleaner pad to Standage until 2006. This lease was signed by Standage both as lessor and as lessee. The second agreement, dated June 10, 1980, purported to be an arrangement between Standage and Crow as first parties and PIC as second party whereby Crow would clean the shopping center parking lot and provide Standage and his family free dry cleaning in lieu of paying rent. Standage also signed this agreement as both first party and second party.

This case was consolidated from December 20, 1984, to April 3, 1987, with two earlier cases which involved the validity of a 1968 lifetime management agreement allegedly between Standage and PIC and PIC's attempts to remove Standage as its manager. The parties stipulated that the issues in this case would be bifurcated from the trial in the other two cases and would be tried by the court without a jury on the evidence presented in the other two cases to the extent it was relevant, as well as on such additional evidence as the parties chose to present. In the earlier cases, PIC obtained a judgment against Standage on claims arising out of the alleged 1968 management agreement and two promissory notes and mortgages. The jury in those proceedings also determined that the documents were false. PIC was awarded both compensatory and punitive damages pursuant to findings that Standage had filed false documents, had willfully refused to release certain documents, had slandered title and had breached his fiduciary duty to PIC.

After the trial in this action, the court found that the 1976 lease and the 1980 agreement were neither drafted nor signed in 1976 or 1980 but rather in 1984 when the forcible detainer litigation became intense. The court further found that PIC did not ratify the documents, that Standage had no authority to sign either agreement on behalf of PIC and that he did not disclose the agreements either in his divorce or to a prospective purchaser of the shopping center in 1982. Previously, both Standage and Crow had claimed only an oral month-to-month tenancy of the dry cleaning pad. Standage also did not disclose the doc-

uments in his 1983 bankruptcy. The court noted that the originals of the documents had not been produced and found that failure to disclose them constituted a breach of fiduciary duty and interfered with PIC's ability to re-lease the premises.

The court denied relief on all claims of the amended complaint. With regard to the counterclaim, the court awarded PIC damages of $51,785 against Standage for breach of fiduciary duty, awarded damages of $13,592.50 against both Standage and Crow for forcible detainer, awarded punitive damages against Standage in the amount of $50,000, and awarded attorney's fees against both Standage and Crow in the amount of $81,882 "because of the vexatious and protracted nature of th[e] litigation." Only Standage has appealed.

On appeal, Standage contends that 1) a corporate officer cannot be held accountable for breach of fiduciary duty arising after his termination, 2) forcible detainer cannot be maintained against a tenant who is not in actual possession at the commencement of the action, 3) actual damages must be awarded as a predicate to an award of punitive damages, 4) the attorney's fees award was improper, and 5) the court improperly awarded a judgment for wrongful prosecution of a civil action.

## BREACH OF FIDUCIARY DUTY

■ Standage contends that because the court found that he fabricated the lease agreements in 1984 after he had been removed as an officer and director, as a matter of law he cannot be held liable for breach of a fiduciary duty.

■ We initially observe, as PIC has noted, that Standage does not complain factually about the finding of breach of fiduciary duty; he only contends that as a matter of law the finding cannot support a judgment against him. We also note that from the filing of the amended complaint until the close of trial, Standage insisted the agreements were valid and that they gave him at least a thirty-year lease in the dry cleaning premises at no rent other than cleaning of the parking lot by Crow and free dry cleaning for Standage and his family. The only reason the agreements ever had any credibility was because of Standage's prior fiduciary relationship to PIC.

The fact that Standage was found to have manufactured the agreements in 1984 is of no consequence in the action for breach of fiduciary duty. What is of consequence is the fact that he dated them 1976 and 1980 and represented that they were drafted and executed in those years at a time when he did owe a fiduciary duty to PIC in an attempt to assert a long-term claim to a portion of PIC's property. Indeed, Standage testified that he was authorized by PIC to sign the agreements on its behalf. The fact that Standage was unable to sufficiently cover the tracks of his deception so that the court was able to determine when the documents were actually created does not permit Standage to now rely on the court's determination of the true date in order to escape liability for his misdeeds.

Even if Standage had been able to persuade the court that the agreements were actually created in 1976 and 1980, however, he would still be liable for breach of fiduciary duty for self-dealing. Both agreements were signed by Standage as both lessor and lessee. Both are grossly unfair to PIC. There was testimony that the amount of rent stated in the 1976 agreement was not a fair rent. Furthermore, the 1980 agreement provides that it was terminable only by Keith Standage. Such agreements would have been otherwise invalid even if they were not found to be fraudulent. See A.R.S. § 10–041; *Kadish v. Phx.–Scotts. Sports Co.*, 11 Ariz.App. 575, 466 P.2d 794 (1970). Furthermore, the trial court found that "[t]here [was] no credible evidence that P.I.C. ever saw, ratified or consented to" either agreement, and there is substantial evidence in the record to support that finding.

In addition, the evidence showed that Standage had a long-standing relationship with Crow extending throughout the period during which Standage was a director and officer of PIC and continuing after he was

removed. Standage, from the start of Crow's tenancy, never disclosed to PIC his relationship with Crow, did not collect rent, took no action to evict Crow for non-payment of rent, did not set a fair market rent and accepted free dry cleaning for himself and his family without accounting for it to PIC.

The Supreme Court of Utah in *Microbiological Research Corp. v. Muna*, 625 P.2d 690 (Utah 1981), stated the general rule and its exception regarding breach of fiduciary duty as follows:

> When a corporate officer ceases to act as such, because of his resignation or removal, the fiduciary relationship ceases. However, where a transaction has its inception while the fiduciary relationship is in existence, an employee cannot by resigning and not disclosing all he knows about the negotiations, subsequently continue and consummate the transaction in a manner in violation of his fiduciary duties. This exception is well illustrated in *Glen Allen Mining [Co.] v. Park Galena Mining Company*, [77 Utah 362, 296 P. 231 (1931)] wherein the defendants while officers of the company developed and put into motion the plans that ultimately resulted in certain contracts disadvantageous to the corporation. This court ruled that under such conditions, an officer cannot avoid responsibility for violating his fiduciary duties by delaying the final execution of a contract until the expiration of his relation.

625 P.2d at 695. Although the court found that the exception was inapplicable to that case, we find it to be applicable here. Standage asserted a claim against PIC based on fraudulent documents which he attempted to have relate back to the time period when he was authorized to act on behalf of the corporation. The fact that he was not successful in his attempt does not relieve him of liability for acts that were found to have actually occurred subsequent to his removal as an officer, director and manager.

We find no error in the trial court's findings of fact and conclusions of law.

## FORCIBLE ENTRY AND DETAINER AWARD

During the time PIC was in the process of removing Standage as manager of the shopping center, the information it had was that Crow had a month-to-month tenancy of the dry cleaners. After Stapley took over as manager, PIC began proceedings to remove Crow for non-payment of rent. Although PIC's counterclaim sought forcible entry and detainer against Crow alone, its pretrial statement indicated that relief was sought against both Standage and Crow, and the cause of action was tried in that manner without objection from Standage. Both Standage and Crow maintained throughout the trial that Standage was the actual tenant of the premises and that Crow was only his hired hand who operated the dry cleaning business.

On appeal, Standage contends that a forcible detainer action may only be brought against a tenant in actual possession of the premises at the time the action commences. Because he was not in actual possession at that time, he contends the court improperly awarded judgment against him for forcible entry and detainer.

Standage ignores the case of *Gangadean v. Erickson*, 17 Ariz.App. 131, 133, 495 P.2d 1338, 1340 (1972), in which the court stated as follows: "Actual physical possession is not required as a prerequisite to the bringing of such an action if possession is claimed by one who contends that he is entitled to exercise dominion and control and has not abandoned that claim." Because Standage claimed the right to possession of the premises under the fabricated 1976 lease from PIC in his verified amended complaint and in his testimony at trial, and because Crow, who was in actual possession, claimed his rights through Standage, we find no merit to this contention.

## PUNITIVE DAMAGE AWARD

Standage argues that because the award of damages for breach of fiduciary duty was improper, the punitive damage

award must fall. Because we have found compensatory damages on the underlying claim were properly awarded, there is no merit to the contention.

## ATTORNEY'S FEE AWARD

Standage raises three arguments why attorney's fees should not have been awarded in this case.[1] We find no merit to Standage's contention that the application for attorney's fees failed to indicate the agreement with the client on payment of fees. There is sufficient evidence in the record from which the court could determine that the award did not exceed the amount agreed to be paid.

The trial court's ruling on attorney's fees was entered shortly before the case of *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987), was decided. Therefore, it did not address the propriety of an award of attorney's fees for breach of fiduciary duty. Because we do not have sufficient facts before us with which to determine whether the fiduciary duty involved here is one implied in law or in contract, we remand the matter for the trial court to make that determination. Because the matter must be remanded for a new determination of attorney's fees, it is unnecessary for us to consider Standage's argument that the court failed to apportion the award between claims within and without A.R.S. § 12–341.01(A).

## WRONGFUL PROSECUTION OF A CIVIL ACTION

Finally, Standage claims that the court in effect improperly entered judgment against him for wrongful prosecution of a civil action. The record shows no such claim was ever included in the case.

The judgment is affirmed, and the case is remanded for a new determination of attorney's fees. Appellees are awarded attorney's fees on appeal with respect to those issues upon which they have prevailed,

upon compliance with Rule 21(c), Ariz.R. Civ.App.P., 17A A.R.S.

LACAGNINA, C.J., and ROLL, P.J., concur.

---

**1.** We note that the minute entry of November 30, 1987, awards attorney's fees only to PIC, but the judgment states that fees are awarded to PIC, to Stapley and to Cheryl Standage.