866 P.2d 889

**Keith F. STANDAGE, a single man, Dim Co., an Arizona corporation, Gove L. Allen, Plaintiffs–Appellants, Cross Appellees,**

**v.**

**JABURG & WILK, P.C. f/k/a McDaniel & Jaburg, P.C., f/k/a McDaniel, Jaburg & Hirsch, P.C., Joseph C. McDaniel, Gary J. Jaburg, Charles Martinez, Dean M. Dinner, Lawrence D. Hirsch, Lawrence E. Wilk, Joe Keilp & I. Marshall Gan, Defendants–Appellees, Cross Appellants.**

No. 1 CA–CV 90–0581.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 12, 1993.

Review Denied Feb. 1, 1994.

Gove L. Allen, Mesa, for plaintiffs-appellants cross appellees.

Broening, Oberg & Woods, P.C. by Neal B. Thomas, Wesley S. Loy, Phoenix, for defendants-appellees cross appellants.

## OPINION

CONTRERAS, Presiding Judge.

This is an appeal from the trial court's orders and judgments in favor of Appellees on all claims alleged by Appellant Keith Standage ("Standage") in a professional malpractice action and the imposition of Rule 11 sanctions of $30,000 against Appellant's counsel, Gove Allen ("Allen"). This action is one in a series of what can only be classified as vexatious lawsuits brought by Standage. A considerable number of issues are presented, some of which are spurious. We affirm on all issues and award Appellees' attorney's fees, costs, and double damages of $5000 each against Allen and Standage pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–349(A).

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. General Background

Hugh Lawson ("Lawson") formed Planned Investment Corporation ("PIC"), a family corporation, in Arizona in 1963. PIC's principal asset is a thirteen-unit shopping center located in Mesa, Arizona. Lawson retained ownership of 52% of PIC's stock and gave 24% to each of his two children: Roger Lawson and Cheryl Standage. Cheryl Standage's husband, Keith F. Standage, managed the shopping center pursuant to a written agreement from 1964 through 1969. Between 1970 and 1984, he served as the manager without a written agreement. Standage also served as PIC's secretary from 1963 until August 5, 1982.

Lawson died in 1979 and his ownership interest passed to his wife, Gladys Lawson. After Lawson's death, Standage negotiated with Gladys Lawson to purchase her interest in the shopping center. Prior to the completion of the sale, Cheryl Standage filed for divorce, and the sale negotiations terminated.

In the divorce action, Cheryl Standage was awarded the 24% of PIC stock as her sole and separate property. *Standage v. Standage,* 147 Ariz. 473, 480–81, 711 P.2d 612, 619–20 (Ct.App.1985).

In November 1983 PIC obtained a court order removing Standage as manager of the shopping center effective February 14, 1984. After Standage was removed, PIC hired an independent property management company to manage the shopping center. When the new management company failed to receive rent from Ivory Crow ("Crow") who operated Crow Cleaners, a dry cleaning business in the shopping center, it gave notice to terminate Crow's month-to-month tenancy. On June 21, 1984, PIC filed a forcible detainer action against Crow, which was later dismissed.

Crow filed an action ("PIC II") and later Standage joined Crow as a party plaintiff in the amended complaint filed on September 5, 1984. Their amended complaint alleged that both Cheryl Standage and the new property management company intentionally interfered with the business relationship between Crow, Standage, and PIC; that PIC breached an agreement with Crow and Standage; and that PIC had racially discriminated against Crow. Standage also asserted that he had a lease agreement with PIC for Crow Cleaners. PIC counterclaimed ("PIC III") seeking a declaratory judgment that the two agreements under which Standage was claiming rights to lease Crow Cleaners were invalid and unenforceable. The counterclaim alleged breach of fiduciary duty and breach of contract against Standage and also alleged a claim of forcible detainer and conversion against Crow.

The two agreements involved in the counterclaim were (1) a July 1, 1976, lease signed by Standage both as lessor and as lessee, which purportedly leased the dry cleaner premises to Standage until 2006, and (2) a 1980 agreement signed by Standage as both first and second party between Standage and Crow as first parties and PIC as second party whereby Crow agreed to clean the shopping center parking lot and provide

Standage and his family free dry cleaning in lieu of paying rent.

The action was consolidated with two earlier cases ("PIC I") that involved the validity of a 1968 lifetime management agreement allegedly between Standage and PIC and PIC's attempts to remove Standage as manager. The parties stipulated that the issues in the action would be severed from the trial in the PIC I cases. In PIC I, PIC obtained a judgment against Standage on claims arising out of the alleged 1968 management agreement and two promissory notes and mortgages. The jury in those proceedings also determined that the documents were false. PIC was awarded both compensatory and punitive damages pursuant to findings that Standage had filed false documents, had willfully refused to release certain documents, had slandered title, and had breached his fiduciary duty to PIC. *Standage v. Planned Investment Corp.*, 160 Ariz. 287, 289, 772 P.2d 1140, 1142 (Ct.App.1988) (addressing PIC I, II, and III).

In the remaining trial involving PIC II and PIC III, the trial court found that the 1976 lease and the 1980 agreement were neither drafted nor signed in 1976 or 1980, but rather were drafted and signed in 1984 when the forcible detainer litigation arose. The court further found that PIC did not ratify the documents, that Standage had no authority to sign either agreement on behalf of PIC, and that he did not disclose the agreements in his divorce or to a prospective purchaser of the shopping center in 1982, nor reference the agreements in documents filed in his 1983 bankruptcy. Previously, both Standage and Crow had claimed only an oral month-to-month tenancy of the dry cleaning premises. The court noted that the originals of the documents had not been produced and found that the failure to disclose them constituted a breach of fiduciary duty and interfered with PIC's ability to re-lease the premises.

The trial court denied relief on all claims of the amended complaint. In PIC III (the counterclaim), the court awarded PIC damages against Standage for breach of fiduciary duty and awarded damages against both Standage and Crow for forcible detainer. It further awarded punitive damages against Standage and attorney's fees against both Standage and Crow "because of the vexatious and protracted nature of th[e] litigation." Standage appealed, and this Court affirmed all issues except the award of attorney's fees, which it remanded for a new determination. *Id.*

### B. Background of the Present Litigation

On November 29, 1988, Standage filed the complaint in the present case alleging professional malpractice against his bankruptcy attorney, Joseph C. McDaniel, his firm, and employees of the firm. Standage filed an amended complaint on May 26, 1989, alleging *inter alia* that Appellees committed malpractice when they failed to: (1) affirm a July 1, 1976, lease agreement between PIC and Standage within sixty days of the filing of the bankruptcy petitions pursuant to 11 U.S.C. § 365(d)(4); (2) inform Standage that pursuant to 11 U.S.C. § 365(d)(4), the July 1, 1976, lease had been terminated by operation of law and therefore the pursuit of the PIC II lawsuit would be futile and the award of damages against Standage could have been avoided; (3) object to the fee application submitted by Brent Corwin in bankruptcy court; (4) file a statement of compensation pursuant to 11 U.S.C. § 329 and Bankruptcy Rule 2016; and (5) inform Standage that an opening brief in the appeal of PIC I and PIC II was due on May 18, 1986.

Appellees filed several successive motions for partial summary judgment. The first motion for partial summary judgment that Appellees filed involved the validity of the 1976 lease agreement. Appellees claimed that since it was determined in *Standage v. Planned Investment Corporation*, 160 Ariz. 287, 772 P.2d 1140 (1988), that the 1976 lease agreement had been fabricated, no claims that have their "genesis in the existence or validity of the 1976 lease" could have any merit. The trial court agreed and granted the motion.

Appellees filed a second motion for partial summary judgment regarding Appellees' failure to object to Brent Corwin's fee application in the bankruptcy proceeding. In July 1985 Standage retained an attorney, Brent Corwin, to represent his interests in Marico-

pa County Cause Nos. C–486392, C–486671, and C–516098. Judgments adverse to Standage's interests were ultimately rendered in each of these cases. After Standage began experiencing financial difficulties, he retained Appellees to explore the possibility of filing bankruptcy and eventually, a voluntary petition for bankruptcy was filed on March 13, 1986. During the pendency of the bankruptcy proceedings, Brent Corwin submitted a fee application seeking compensation for legal services previously rendered to Standage. The United States Bankruptcy Court heard the fee application on June 16, 1987, and Appellee Jaburg, "finding the fees to be reasonable," did not object to the application. *In re Dim Co.,* No. 86–928, at 4–8 (Bankr. D.Ariz. June 16, 1987). Standage did object, however. After considering Standage's objection, the bankruptcy court continued the matter to allow Standage to conduct discovery into the reasonableness of the fee application. *Id.* Consideration of the fee application was subsequently postponed indefinitely pending resolution of Standage's malpractice action against his previous attorney, Brent Corwin.

In the motion for partial summary judgment, Appellees argued that Standage had failed to establish a prima facie case of negligence and failed to establish that Appellee Jaburg's decision not to object to the fee application "was anything but a judgment call." Prior to the trial court ruling on the motion, Appellees filed a third motion for partial summary judgment on the issue of Appellees' failure to file a statement of compensation. The trial court granted both of Appellees' motions for partial summary judgment.

Appellees filed a fourth motion for partial summary judgment regarding Standage's claim that Appellees failed to oppose PIC's motion for relief from automatic stay in bankruptcy court. In the bankruptcy proceeding, the bankruptcy court granted the relief and allowed the then pending litigation to proceed in State court. Appellees argued that the trial court should grant its motion for partial summary judgment because the doctrine of res judicata precluded relitigation of this issue since, after the stay was lifted,

the litigation proceeded in state court to its conclusion. The trial court granted the fourth motion for partial summary judgment.

Appellees filed a fifth motion for partial summary judgment on behalf of Appellees Dean Dinner, Charles Martinez, and Marshall Gan. Appellees noted that none of these individuals were ever shareholders of the professional corporation. Instead, these individuals were associate lawyers employed by the firm. Furthermore, Standage admitted that none of these three Appellees were engaged in any of the tortious conduct complained of in the complaint. The trial court granted the fifth motion for partial summary judgment.

On May 1, 1990, Gove Allen who had represented Standage throughout the present proceedings filed a motion to withdraw as attorney of record for Standage. The trial court denied the motion.

Appellees filed a sixth motion for partial summary judgment regarding any issues of liability arising out of Appellees' alleged failure to properly advise Standage regarding the appeal from the PIC I judgment. The trial court also granted this motion for partial summary judgment.

Appellees next filed a motion for sanctions pursuant to Ariz.R.Civ.P. ("Rule") 11, A.R.S. section 12–341.01(C), and A.R.S. section 12–349 requesting reimbursement of costs, reasonable attorney's fees, and sanctions. After conducting an evidentiary hearing on Appellees' motion for sanctions, the court awarded Appellees $30,000 against Allen pursuant to Rule 11 and denied all other requests for sanctions. Consequently, Allen is a party to this appeal. On August 28, 1990, the court entered final judgment in favor of Appellees and ordered Standage and Dim Co. to pay $250 as discovery sanctions.

After Appellants filed their opening brief in this Court, Appellees filed a motion with this Court seeking dismissal of the appeal because Appellants (1) argued four issues that were never urged or decided in the trial court; (2) inadequately briefed or preserved the remaining issues; (3) recited facts in the Statement of Facts that did not reference evidence submitted to the trial court during

its deliberations on the numerous motions for partial summary judgment, but instead referenced evidence submitted to the trial court during the evidentiary hearing that resulted in Rule 11 sanctions against Allen; and (4) failed to comply with Rule 13(a)(4), which requires a Statement of Facts relevant to the issues presented for review with appropriate references to the record. This Court denied the motion to dismiss and directed that these infirmities be addressed in the answering brief.

Appellees further filed a motion with this Court to add Allen's wife to the appeal to enable them to collect the Rule 11 sanctions of $30,000 against Allen's community property. This Court denied Appellees' motion.

## II. DISCUSSION

On appeal, Appellants argue several issues [1]:

(1) whether Appellees committed professional malpractice for failing to affirm the 1976 lease in bankruptcy court and failing to inform Standage that the statute of limitations on his claim in PIC II had therefore expired, which resulted in the loss of the chance for him to terminate litigation and avoid incurring adverse awards and sanctions;

(2) whether Appellees committed professional malpractice for failing to inform Standage as to the date the opening brief was due in the appeal of PIC I and PIC II;

(3) whether Standage can recover punitive damages from Appellees because Appellees' conduct demonstrated a reckless disregard for his rights;

(4) whether the 1976 lease agreement did not need to be approved by a disinterested majority of the board of directors because the minority shareholders had waived the formalities of corporate law

by giving the majority stockholder, Hugh Lawson, unfettered discretion in operating the corporation for fifteen years;

(5) whether the trial court erred in dismissing three associates from the appeal based on the theory that partners and employees of the firm are vicariously liable for malpractice committed by any member of the law firm; and

(6) whether the trial court abused its discretion in imposing Rule 11 sanctions in the amount of $30,000 against Allen, Standage's attorney.

■ Before Standage can succeed in his professional malpractice action, he must show (1) the existence of an attorney-client relationship, which imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession; (2) breach of that duty; (3) that such breach of duty was a proximate cause of the resulting injury; and (4) damages. *See Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (Ct.App. 1986). Also, the alleged malpractice of an attorney is judged against an objective standard in which Standage must prove that but for the attorney's alleged malpractice, he would have been successful in prevailing in the original suit. *See id.*

### A. Alleged Failure to Affirm 1976 Lease and Failure to Inform Standage that Statute of Limitations had Expired on His Claim

■ Appellants contend that the trial court erred by entering summary judgment in favor of Appellees on the issues of failing to inform Standage that the lease agreement was terminated by operation of law on May 12, 1986, and failing to affirm the 1976 lease in the bankruptcy court. Standage argues that he retained Appellee Joseph C. McDaniel ("McDaniel") and that McDaniel breached

---

1. Preliminarily, we note that Appellants' appellate briefs prepared by Gove Allen are convoluted, contain circular arguments, include arguments not raised in the trial court, fail to assert where the trial court erred, and fail to make appropriate references to the record. In our discretion, however, we have chosen to address the merits of the majority of issues Appellants raise on appeal. This has been extremely difficult because of Appellants' disregard of the Rules of Civil Appellate Procedure, their unsupported arguments, and their general indifference to an orderly judicial process.

his duty when he failed to inform Standage that the lease was terminated. Standage claims that if he had known the lease was terminated, he would have stopped his participation in PIC II and avoided the risk of incurring additional damages.

Appellees contend that the trial court did not err because Standage could not make any claims that had their genesis in the existence or validity of the 1976 lease agreement. This argument derives from the fact that the trial court and this Court previously determined in *Standage v. Planned Investment Corporation* that the 1976 lease agreement did not exist in 1976 and was a fabricated lease agreement created years later. 160 Ariz. at 289–90, 772 P.2d at 1142–43. Furthermore, Appellees undermine Standage's contention that he would not have pursued the PIC II litigation any further had he known there would have been a legal bar because of the failure to affirm the lease in bankruptcy proceedings by claiming that Standage "knew he fabricated and created a lease solely for his own end." Therefore, Appellees conclude that Standage may not complain about Appellees' failure to affirm the fraudulently created document. We agree.

We conclude that the trial court did not err in granting partial summary judgment on this issue. This Court and the trial court in PIC I and PIC II have previously determined that the lease agreement at issue is fraudulent. *Id.* Standage may not make a claim predicated on a fraudulent document that he created. We find it brazen, to say the least, that Standage sued Appellees for professional malpractice concerning a document he fraudulently produced. We also disapprove of Allen pursuing an appeal on this issue when he knew that the document underlying Standage's claim was previously determined to be fraudulent by this Court.

B. *Alleged Failure to Inform Standage about Due Date of Opening Brief in PIC I and PIC II Appeal*

Standage claims that Appellees committed professional malpractice when they failed to inform Standage that the opening brief in the appeal from the judgments in PIC I and PIC II was due on May 18, 1986.

Appellees contend that even if they failed to inform Standage about the due date of the brief, Standage must prove he would have prevailed on his original claims in PIC I and PIC II, which he has failed to establish and cannot accomplish. Appellees argue that Standage is seeking to relitigate a claim that he already litigated in bankruptcy court against his civil attorney, Brent Corwin.

We find that collateral estoppel precludes relitigation of this issue. Standage previously pursued a professional malpractice claim against his prior counsel, Brent Corwin, in bankruptcy court contending that Corwin committed malpractice when he failed to inform Standage as to the due date of the opening brief in the appeal of PIC I and PIC II. *In re Standage*, No. 86–927, at 14–20 (Bankr.D.Ariz. Feb. 15, 1990). The bankruptcy court determined that Standage failed to demonstrate that he would have been successful on appeal and therefore found that his malpractice claim against Corwin fails. *Id.*

Determining whether collateral estoppel applies in the present case depends on whether or not the bankruptcy proceeding litigated an issue of fact that was essential to the judgment. *Food for Health Co. v. 3839 Joint Venture*, 129 Ariz. 103, 107, 628 P.2d 986, 990 (Ct.App.1986) (collateral estoppel occurs "when a party *defending* a claim attempts to assert a previous judgment, to which it was not a party, against an opponent who was a party to preclude relitigation of the claim"). The question of whether professional malpractice occurred from Appellees' alleged failure to inform Standage about the due date for the opening brief is common to both the Corwin professional malpractice action in bankruptcy court and the present case. Because Standage failed to establish in the earlier proceeding that he would have been successful on appeal, and because the issue in Corwin is common to the present case, we conclude that collateral estoppel applies and decline to relitigate this issue. *See Phillips*, 152 Ariz. at 418, 733 P.2d at 303 (in a professional malpractice action, claimant must demonstrate that he would have been successful in prevailing in original suit); *Forty–Four Hundred East Broadway Co. v.*

*4400 East Broadway,* 135 Ariz. 265, 660 P.2d 866 (Ct.App.1982) (final judgment of the bankruptcy court is entitled to full faith and credit in the Superior Court of Arizona). Again, we are greatly disturbed that Allen would assert this claim on appeal knowing that (1) Standage could not prevail in his professional malpractice action unless he could establish that he would have prevailed in the original suit, (2) the bankruptcy court had already determined that Standage could not prevail in PIC I and PIC II, and (3) collateral estoppel applies, which precludes this Court from relitigating an issue that has previously been litigated.

## C. Allegation that Punitive Damages Should Have been Awarded Against Appellees

· Standage argues that punitive damages should have been awarded against Appellees because their conduct demonstrated a reckless disregard of his rights when they failed to validate the 1976 lease agreement in the bankruptcy proceedings and failed to inform him about the due date of the opening brief in the appeal of PIC I and PIC II. After reviewing the record, combined with our affirmance of the trial court's decisions, we find that the issue of the availability of punitive damages is not only moot, but also was not litigated in the trial court. Therefore, even if this issue was not moot, it is waived on appeal since it was not litigated in the trial court. This argument is specious.

## D. Allegation that Corporate Formalities were Waived

■ Standage's arguments on this issue can only be classified as convoluted. As best we can discern from Appellants' disjointed legal arguments, Standage contends that the trial court in previous litigation erred in concluding that the investment and management agreements involved in PIC I and PIC II were not approved by a majority of the disinterested directors in a formal directors meeting. Standage claims that error occurred because the formalities of corporate law were waived by the minority stockholders who allegedly stood by for approximately fifteen years and allowed the majority stockholder,

Hugh Lawson, to operate the company with unfettered discretion. Standage therefore concludes that because PIC was informally operated by Lawson and Lawson approved the investment and management agreements involving Standage, reversible error has occurred based on the ground that these agreements were valid.

Appellees argue that self-dealing, not apparent authority, rendered Standage's conduct and agreements voidable. Furthermore, Appellees note that the trial court in the present action was not presented with any competent evidence that existed at the time of the motion for partial summary judgment that would have established that Hugh Lawson retained sole control of PIC.

We conclude that the issue of the validity of the agreements along with his conduct were previously decided adversely to Standage's interests in PIC I and PIC II and the bankruptcy proceeding. We will not relitigate this issue. However, even if we were to consider the merits, we find that Standage has failed to demonstrate legal or factual support for his position that the corporate formalities were waived or that Standage's self-dealing would not render the agreements voidable. *See, e.g., Mast v. Standard Oil Co.,* 140 Ariz. 1, 2, 680 P.2d 137, 138 (1984) (Court of Appeals is not required to perform counsel's work by searching record to attempt to discover facts that establish or defeat motion for summary judgment).

## E. Contention that Trial Court Erred in Granting Summary Judgment in Favor of Associate Attorneys

■ Standage contends that the trial court erred in granting summary judgment in favor of Appellees Dean Dinner, Charles Martinez, and Marshall Gan. Standage argues that since no distinction was made on the firm's letterhead between owners and employees, all lawyers listed on the letterhead and practicing under a common name were vicariously liable for Appellee McDaniel's alleged malpractice. This argument is so specious as to be ludicrous.

None of the three attorneys were ever shareholders in the professional corporation. They were associate lawyers employed by

the firm who did not participate in any of the alleged tortious activities of the professional corporation. Consequently, these associate lawyers were not vicariously liable for any alleged misconduct of the professional corporation.

In its professional malpractice action, Standage listed as Defendants all of the attorneys who were associated with Appellee McDaniel from March 10, 1986, until December 8, 1987, without distinguishing or undertaking any formal discovery to determine which lawyers were shareholders, which ones were employees of the firm, or which ones participated in any representation of Standage. The status of these three attorneys is best described as an "employee" licensed to practice law. *See* A.R.S. § 10–902.

The question is whether employees of a law firm are vicariously liable for professional malpractice allegedly committed by members of the professional corporation. A.R.S. section 10–904 states that a professional corporation shall be governed by general corporation law unless stated otherwise. Generally, individual officers, directors, shareholders, agents, and employees are not liable for torts of a corporation unless they were directly involved in the tortious act or the corporation is an alter ego. *See, e.g.,* A.R.S. § 10–905 (liability of a shareholder of a professional corporation is several only, and a shareholder is not vicariously responsible for the liability of another shareholder); *Barker v. General Petroleum Corp.,* 72 Ariz. 187, 232 P.2d 390, *modified on other grounds,* 72 Ariz. 238, 233 P.2d 449 (1951) (wholesale agent of corporation dealing in petroleum products employed a subagent whose negligence caused fire, but corporation was liable and not wholesale agent); *Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Min. & Equip. Contractors Co.,* 145 Ariz. 204, 700 P.2d 902 (Ct.App.1985) (to be held liable, directors or officers must participate or have knowledge amounting to acquiescence or be guilty of negligence in management or supervision causing or contributing to the injury or tort committed by the corporation, and directors are not personally liable merely by virtue of the office they hold). We note that Standage fails to cite any relevant authority for his proposition

that employees of a law firm are vicariously liable for malpractice allegedly committed by other members of the professional corporation. In fact, caselaw and statutes are to the contrary. An employee is not vicariously liable simply because he or she worked as an employee for the firm. Therefore, because Dinner, Gan, and Martinez were employees of the firm, and because there is no evidence in the record indicating that they were directly involved in any of the alleged tortious acts, the trial court properly dismissed them from the present lawsuit.

*F. Allegation that Trial Court Erred in Imposing Rule 11 Sanctions of $30,000*

■ Allen contends that because he, in good faith, asserted valid claims for relief on behalf of Standage and because he did not pursue frivolous claims in bad faith, the trial court erred in awarding Rule 11 sanctions of $30,000 against him.

Our standard of review is whether the trial court abused its discretion in imposing Rule 11 sanctions against Allen. *James, Cooke & Hobson v. Lake Havasu Plumbing,* 177 Ariz. App. 329, 868 P.2d 329, 137 Adv.Rep. 53 (Ct.App. April 24, 1993) (adopting abuse of discretion standard for all aspects of orders imposing Rule 11 sanctions). The trial court conducted an evidentiary hearing on August 3 and 5, 1990. After a lengthy hearing, the trial court declined to impose sanctions against Standage, but did impose a sanction of $30,000 against Allen. In making its award, the court stated "This Court is of the opinion that the filing of this Complaint and the prosecution of the Complaint is a clear violation of Rule 11."

■ After reviewing the extensive record in this case, we determine that there was no abuse of discretion. The record is replete with information that the claims made by Allen on behalf of Standage were unsubstantiated and frivolous. We particularly note that this Court's decision in *Standage v. Planned Investment Corporation* was filed on December 27, 1988, and the Arizona Supreme Court denied review on May 23, 1989. Appellant Allen was the attorney in that appeal. As such, it would seem that he had actual knowledge of this Court's decision on

many of the underlying issues when he filed an amended complaint in the present case on May 26, 1989. Allen had an obligation as an attorney to review and reevaluate his client's position as the facts of the case developed and—although he should have known at the outset that the claims were frivolous—if he did not know at the outset, as he became aware of information that should reasonably lead him to believe there was no factual or legal bases for his position, he was obligated to re-evaluate any earlier certification under Rule 11. *See Boone v. Superior Court,* 145 Ariz. 235, 241–42, 700 P.2d 1335, 1341–42 (1985); *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 184–85, 745 P.2d 617, 632 (Ct.App.1987).

Furthermore, the record in this matter clearly demonstrates that Allen's contention that he made the claims in good faith is so weak as to be almost nonexistent. His contention is also undermined by the fact that he conducted no formal discovery. As an example, in the evidentiary hearing, the following exchange occurred:

Q. You never conducted any discovery in this case, is that correct?

Allen: I conducted hours—two, three, four, 500, 600 hours of discovery in this case.

Q. What was the first form of discovery under the Rules of Procedure that you conducted in this case?

Allen: *I haven't conducted any discovery under the Rules of Procedure.* (emphasis added).

■ We will not condone the actions of an attorney who attempts to hide behind the good faith component of Rule 11 when he has conducted no formal discovery and has proceeded with complete disregard to whether the claim is well grounded and warranted by law. The good faith component of Rule 11 is not based on whether an attorney subjectively pursues claims in good faith, but instead is judged on an objective standard of what a professional, competent attorney would do in similar circumstances to satisfy the requirements of Rule 11. We therefore find that the trial court did not abuse its discretion in awarding $30,000 in sanctions against Allen pursuant to Rule 11.

### G. Appellees Request that Sanctions Be Imposed for the Filing of This Appeal

■ Appellees request this Court to award them costs, attorney's fees, and an additional sanction of double damages against Allen and Standage pursuant to A.R.S. sections 12–341.01(C) and 12–349 for filing and pursuing this frivolous appeal. Appellees further request this Court to add Allen's wife as a party to the appeal as an additional sanction.

After extensively reviewing the record we conclude that the appeal is specious and was brought without substantial justification. Accordingly, we award attorney's fees, costs, and double damages of $5000 against both Standage and Allen pursuant to A.R.S. section 12–349(A). We conclude that Allen has brought and pursued this appeal without substantial justification. He has failed to conduct formal discovery, make reasonable inquiry, or accept and be governed by previous decisions of this Court and the bankruptcy court that have already addressed the underlying issues of this appeal. We further conclude that Standage's pursuit of this appeal is consistent with his past conduct in which he has brought a series of groundless, vexatious lawsuits primarily for harassment purposes. We expressly note that some of his underlying conduct has been previously determined to be fraudulent. Both Allen and Standage have demonstrated an utter disregard for the judicial process. We will not tolerate such an abuse of our Courts or an abuse of the rights of others who were required to appear and defend in this litigation.

This Court has previously considered Appellees' motion and related memoranda to add Allen's wife as a party and denied it. We will not reconsider this issue.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's orders and judgments in favor of Appellees on all claims alleged by Standage in the professional malpractice action and imposing Rule 11 sanctions of $30,000 against Appellant Allen. In our discretion, we award Appellees' attorney's fees, costs, and double

damages of $5000 each against Allen and Standage pursuant to A.R.S. sections 12–349(A). Appellees are directed to file a statement of costs and claim for attorney's fees pursuant to Rule 21 of the Arizona Rules of Civil Appellate Procedure.

KLEINSCHMIDT and JACOBSON, JJ., concur.