Wesley G. HARLINE, Plaintiff
and Appellant,

v.

Ronald C. BARKER and Larry Whyte,
Defendants and Appellees.

Wesley G. HARLINE, Plaintiff
and Appellant,

v.

Pete N. VLAHOS and Vlahos and Sharp,
a partnership, Defendants and
Appellees.

Nos. 940322, 940323.

Supreme Court of Utah.

Feb. 14, 1996.

**434**

Third District, Salt Lake County; Tyrone Medley in the Barker case; Leslie A. Lewis in the Vlahos case.

J. Bruce Reading, Wesley D. Hutchins, Salt Lake City, for Harline.

Thomas L. Kay, Mark O. Morris, Amy E. Weissman, Salt Lake City, for Barker and Whyte.

Carman E. Kipp, Michael F. Skolnick, Salt Lake City, for Vlahos.

ZIMMERMAN, Chief Justice:

This opinion addresses two appeals filed by Wesley G. Harline from separate grants of summary judgment, each in favor of the attorneys who represented Harline in connection with his bankruptcy before the U.S. Bankruptcy Court for the District of Utah. After the bankruptcy court denied Harline's bankruptcy discharge, Harline brought two legal malpractice actions, the first against defendants Pete N. Vlahos and the law firm Vlahos and Sharp (collectively "Vlahos"), and the second against defendants Ronald C. Barker and Larry Whyte. Both sets of attorneys moved for summary judgment, alleging that they were not the proximate cause of the denial of Harline's discharge. The trial court in each action granted the motion, ruling that Harline had failed to produce any record evidence that the attorneys had caused the denial of Harline's bankruptcy discharge.[1] Harline appeals both rulings. Because each appeal raises similar claims, we consider them together and discuss pertinent differences between them in our analysis as necessary. We affirm both rulings.

" '[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *K & T, Inc. v. Koroulis*, 888 P.2d 623, 624 (Utah 1994) (quoting *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993)). Because summary judgment was entered against Harline in both cases, we state the facts in the light most favorable to him.

In February of 1986, Harline retained Vlahos in connection with his chapter 11 petition for bankruptcy. Harline gave Vlahos a list of his creditors and his assets. Vlahos filed Harline's bankruptcy petition on February 14, 1986. Five weeks later, on March 21st, Harline signed both a "Statement of Affairs for Debtor Not Engaged in Business" and schedules of his assets and liabilities. Harline's signature on each document was preceded by the statement "I, Wesley G. Harline, certify under penalty of perjury that I have read ... the foregoing ... and that [it is] true and correct to the best of my knowledge, information and belief." These documents were then submitted to the bankruptcy court.

In June of 1986, Vlahos withdrew as bankruptcy counsel for Harline, and Betty J. Marsh entered her appearance as counsel. Marsh subsequently withdrew, and in the fall of 1986, Barker and Whyte began representing Harline.[2] On September 18, 1986, the bankruptcy court converted Harline's case to a chapter 7 proceeding and entered an order directing Harline and his counsel to prepare and file chapter 7 schedules and statements on or before November 18, 1986.

About two years later, in August of 1988, a hearing was held at which Harline's creditors objected to his bankruptcy discharge. By this date, Harline and his counsel still had not filed new or amended statements and schedules. At the conclusion of the hearing, the bankruptcy court orally denied Harline's discharge on the ground that there were omissions and inaccuracies in Harline's statement of affairs and bankruptcy schedules. The court based its denial of discharge on section 727(a)(2) and (4) of the Bankruptcy Code, which provides:

> The court shall grant the debtor a discharge, unless—
>
> ...;
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, ... or has permitted to be transferred ...
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;
>
> ...;

---

1. The malpractice actions were assigned to different judges in the Third District Court.

2. The parties dispute the date on which Harline engaged Barker and Whyte. However, solely for purposes of this appeal, Barker and Whyte concede that they represented Harline during the relevant time period.

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

11 U.S.C. § 727(a).

The bankruptcy court found that Harline had failed to disclose transfers of partnership interests and real property on his March 21, 1986, statement of affairs. Specifically, Harline answered "No" when asked whether he had been engaged in a partnership or in any business during the six years immediately preceding the filing of his original bankruptcy petition. However, the court found that in January of 1985, thirteen months prior to the filing of his bankruptcy petition, Harline had assigned two partnership interests to the Weber Clinic pension plan,[3] which he should have disclosed on the statement. In addition, Harline answered "None" on the statement when asked whether he had made any transfer or other disposition of real or tangible personal property during the year immediately preceding the filing of his original bankruptcy petition. However, the court found that in January of 1985 and December of 1984, Harline executed, without consideration, four quitclaim deeds conveying real property to his children. Two of these deeds were recorded in November of 1985, three months prior to the filing of Harline's original bankruptcy petition; the other two were recorded in March and May of 1986, after Harline's petition was filed. The court held that the date the deed was recorded determined the date of each transfer and that Harline should have disclosed the real property transfers on his statement of affairs.

The court also found other omissions and misstatements in Harline's filing. Specifically, Harline owned a Merrill Lynch stock account at the time he filed his bankruptcy petition but failed to list the account on his bankruptcy schedules. In addition, immediately before and after filing his bankruptcy petition, Harline directed Merrill Lynch to cash out the account, and he used the $38,-634.27 in proceeds for his personal expenses without authorization from the bankruptcy court. Finally, the court found that Harline

did not reside at the address listed on his statement of affairs.

The bankruptcy court found that Harline made the transfers of property and cashed the Merrill Lynch account with the intent to hinder, delay, or defraud creditors and that he knowingly and fraudulently made a false oath by signing the statement of affairs and schedules which misstated his residence, denied the partnership and real property transfers, and omitted the Merrill Lynch account. In making these findings, the court noted that Harline had testified that he signed the statement of affairs and schedules "after only glancing through them [and t]hat he didn't read them, that he was not familiar with bankruptcy law or bankruptcy rules, but that he gave information [omitted from his statement and schedules] to his attorney." However, the court concluded:

My findings as to intent to hinder, delay or defraud creditors and knowing and fraudulent false oath are made because of the significant number of wrongful acts and the reckless indifference to the truth showed [sic] by Wesley G. Harline.

The sheer weight of the evidence gives rise to the inescapable conclusion that Wesley G. Harline acted knowingly and with the intent to avoid paying creditors with the intent to conceal property or to place the property beyond the reach of creditors.

The Court therefore will not grant to the debtor a discharge. Discharge will be denied.

After the bankruptcy discharge ruling, Harline's attorneys moved to alter or amend the judgment. The motion addressed all the bases the judge gave for his ruling: Harline contended that the real property transfers to his children occurred on the dates Harline conveyed the deeds and not on the dates the deeds were recorded; that liquidating the Merrill Lynch stock account constituted an exchange of assets rather than a transfer; and that Harline did not knowingly and fraudulently make a false oath because he provided his attorneys with all of the information for his statement of affairs and sched-

---

**3.** Harline, a medical doctor, was employed by the Weber Clinic.

ules, advised them of subsequent changes, did not himself prepare or file the statement and schedules, was unfamiliar with bankruptcy rules, relied on the advice of counsel, was unaware that the statement and schedules contained erroneous information, and signed the schedules after only briefly glancing through them. The bankruptcy court denied the motion to alter or amend the judgment. Harline's attorneys then appealed, and in May of 1989, the federal district court dismissed Harline's appeal, affirming both the denial of discharge and the denial of the motion to alter or amend.

Harline next filed a malpractice lawsuit in state court in January of 1990, alleging that Vlahos' negligent preparation of Harline's statement of affairs and schedules directly resulted in the denial of Harline's bankruptcy discharge.[4] In December of 1990, Vlahos filed the first of three motions for summary judgment, contending that Harline's suit was barred by equitable and collateral estoppel and that even if Vlahos was negligent, that negligence was not the proximate cause of Harline's denial of discharge.[5] The district court denied the motion in June of 1991.

Meanwhile, in November of 1990, Harline filed a second malpractice lawsuit in state district court against Barker and Whyte, alleging that their failure to prepare an amended or new statement of affairs and schedules resulted in the denial of Harline's discharge.[6] Barker and Whyte filed their first motion for summary judgment, alleging that Harline's claims were barred by equitable estoppel, that they had no duty to amend the schedules, and that they were not the proximate cause of the denial of Harline's

discharge. The trial court granted Barker and Whyte's motion. Vlahos then immediately moved for summary judgment a second time in his separate suit on the ground that the Barker and Whyte judgment constituted res judicata as to the proximate cause issue. The trial court granted Vlahos' second motion.[7]

Harline appealed both rulings to this court, which transferred the cases to the Utah Court of Appeals. The appeals court reversed the Barker and Whyte judgment, holding that the trial court erred in granting summary judgment on the proximate cause issue. *Harline v. Barker,* 854 P.2d 595 (Utah Ct.App.), *cert. denied,* 862 P.2d 1356 (Utah 1993). The appeals court held that a genuine issue of material fact existed as to how a "reasonable juror" would have ruled regarding Harline's intent to defraud if Harline had submitted amended bankruptcy schedules. *Id.* at 602. The appeals court subsequently issued an unpublished memorandum decision reversing and remanding the Vlahos judgment on the basis of its decision in *Barker. Harline v. Vlahos,* No. 930067, slip op. (Utah Ct.App. Aug. 5, 1993) (mem.).

Vlahos then filed a motion requesting that the original bankruptcy judge clarify his August 1988 order denying Harline's discharge. Vlahos asked the judge to rule that he would have denied Harline's discharge even if Harline had amended his schedules. In essence, Vlahos wanted the bankruptcy judge to state for the record that it was Harline's own wrongdoing that caused the denial of his discharge. On January 24, 1994, the bankruptcy court held a hearing on Vlahos' mo-

---

4. Harline also alleged that Vlahos' negligence directly resulted in the loss of any exemptions. All parties to this appeal conceded at oral argument that the exemption issue is moot, because the bankruptcy court eventually allowed Harline to file an amended exemption schedule which was considered on its merits in the federal courts. *See Harline v. Barker,* 854 P.2d 595, 598 n. 1 (Utah Ct.App.), *cert. denied,* 862 P.2d 1356 (Utah 1993).

5. Vlahos contended that (i) Harline's signature on the statement of affairs and schedules constituted an intervening cause; (ii) Harline's failure to amend his statement and schedules was the proximate cause of his denial of discharge; and

(iii) Harline's pre-petition fraudulent conveyances and misstatements in the original statement and schedules caused his denial of discharge.

6. Harline also alleged that Barker and Whyte's negligence resulted in the denial of any exemptions. This allegation is now moot. *See supra* note 4.

7. The propriety of the trial court's decision on Vlahos' second motion for summary judgment is not before us in this appeal, and we therefore express no opinion regarding the basis for that court's ruling.

tion. Although noting that he was being asked to clarify an order entered over five years earlier and his discomfort with the fact that Harline's attorney was not present, the bankruptcy judge entered an oral ruling "that an amendment would have made no difference whatsoever with this Court's denial of discharge, that the act was the act of Mr. Harline, Wesley Harline, and not the act of any lawyers" and directed "everybody concerned" to his opinion in *Job v. Calder (In re Calder)*, 93 B.R. 734, 737–38 (Bankr.D.Utah 1988) (finding debtor's subsequent disclosure of property interests omitted from statement and schedules insufficient to rebut debtor's intent to defraud), *aff'd*, 907 F.2d 953 (10th Cir.1990). Vlahos' counsel submitted a written order to the bankruptcy court incorporating its oral ruling. Harline's counsel then moved for reconsideration. At an April 25, 1994 hearing on the reconsideration motion, the bankruptcy judge refused to sign the prepared order. However, the judge reiterated that he originally denied Harline's discharge as a matter of law on the basis of *Calder*.

Barker and Whyte then filed their second motion for summary judgment in state district court. They contended that no issues of material fact remained as to causation because the bankruptcy court's January 24th oral ruling conclusively resolved any question as to how the original bankruptcy judge, or any bankruptcy judge, would have ruled on Harline's discharge even if Harline had submitted an amended statement of affairs and schedules. In response, Harline moved to strike any reference to the January 24th ruling, vigorously contesting both the ethical propriety and the admissibility of the ruling. In addition, in an attempt to establish the existence of a disputed issue of material fact, Harline submitted portions of Whyte's deposition and answers to interrogatories which indicated that Whyte knew Harline's statement of affairs and schedules were deficient. After a hearing, the trial court granted the summary judgment motion.

Meanwhile, Vlahos filed his third motion for summary judgment. This motion essentially mirrored Barker and Whyte's second summary judgment motion. In addition,

Vlahos argued that the doctrine of res judicata precluded Harline from litigating the proximate cause issue because of the trial court's decision in the Barker and Whyte case. The trial court granted summary judgment in favor of Vlahos, ruling that there was no longer any material fact at issue, that Harline could not establish that any act or omission by Vlahos proximately caused his loss, and as an additional ground, that the Barker and Whyte judgment was res judicata as to the proximate cause issue.

Harline appeals both rulings. In each appeal, Harline claims that (i) the trial court improperly admitted the January 24, 1994 bankruptcy ruling; (ii) the very issuance of the bankruptcy judge's January 24th ruling violated rule 52(b) of the Federal Rules of Civil Procedure and section 105 of the Bankruptcy Code, was an unconstitutional advisory opinion and, on the merits, was clearly erroneous; and (iii) disputed issues of fact regarding proximate cause preclude summary judgment. We decline to address Harline's second set of claims because he has presented no authority for the proposition that this court could constitutionally review an order emanating from a federal bankruptcy court. In any event, in light of our holding today, we need not reach these claims.

We first state the applicable standard of review. "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *K & T, Inc.*, 888 P.2d at 626–27 (citing Utah R.Civ.P. 56(c); *Higgins*, 855 P.2d at 235). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." *Id.* at 627 (citing *Higgins*, 855 P.2d at 235; *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)). "'We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact.'" *Id.* (quoting *Ferree*, 784 P.2d at 151). In addition, "we may affirm a grant of summary judgment on any ground available to the trial court, even if it is not one relied on below." *Higgins*, 855 P.2d at 235.

As a preliminary matter, we address the question of whether a judge or a jury should decide two issues relating to proximate cause in legal malpractice actions. These issues are common to both appeals before us. Harline first contends that proximate cause issues inevitably raise jury questions and always preclude summary judgment. Harline further contends that if he should prevail on these appeals, at trial a jury should decide whether a reasonable judge would have granted him a discharge absent the alleged negligence of his attorneys, despite the fact that only a bankruptcy judge could have made this determination in the first instance. We disagree with both contentions.

■ We first address the contention that the presence of a question of proximate cause precludes a summary judgment. In a legal malpractice action, a plaintiff must plead and prove (i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages. *Williams v. Barber*, 765 P.2d 887, 889 (Utah 1988); 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.5, at 635 (3d ed. 1989). For the purposes of their summary judgment motions, both Vlahos and Barker and Whyte conceded the existence of an attorney-client relationship, a duty owed to Harline, and breach of that duty. Thus, the question before each trial court was whether the attorneys' breach of duty proximately caused Harline's denial of discharge.

■ Proximate cause is " 'that cause which, in natural and continuous sequence[ ] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury.' " *Mitchell v. Pearson Enters.*, 697 P.2d 240, 245–46 (Utah 1985) (quoting *State v. Lawson*, 688 P.2d 479, 482 & n. 3 (Utah 1984)). Generally, the question of proximate cause raises an issue of fact "to be submitted to the jury for its determination." *Mitchell*, 697 P.2d at 245; *see also* 2 Mallen & Smith, *supra*, § 27.10, at 657. However, there are

occasions when no jury question is presented. As Prosser and Keeton explain, "Two kinds of questions, then, are always to be decided by the jury if reasonable persons could differ about them on the evidence received at trial—first, fact questions in the usual sense and, second, evaluative applications of legal standards (such as the legal concept of 'foreseeability') to the facts." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 45, at 320 (5th ed. 1984). Accordingly, if "there could be no reasonable difference of opinion" on a determination of the facts "in the usual sense" or on an evaluative application of the legal standard to the facts, then the decision is one of law for the trial judge or for an appellate court. *Id.* at 319–20; *cf. State v. Pena*, 869 P.2d 932, 936–39 (Utah 1994) (discussing nature of legal questions). At the other extreme, when the facts are so tenuous, vague, or insufficiently established that determining causation becomes "completely speculative," the claim fails as a matter of law. *Mitchell*, 697 P.2d at 246; *see also Steffensen v. Smith's Management Corp.*, 820 P.2d 482, 486–87 (Utah Ct.App. 1991), *aff'd*, 862 P.2d 1342 (Utah 1993).

■ Contrary to Harline's first contention, then, proximate cause issues can be decided as a matter of law when a determination of the facts falls on either of two opposite ends of a factual continuum. Thus, summary judgment is appropriate (i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law. We therefore reject Harline's first contention that the presence of an issue of proximate cause precludes summary judgment.

■ We now turn to Harline's second contention, that only a jury sitting in the malpractice action should decide what a reasonable judge should have done in the underlying suit. To prove proximate cause in legal malpractice cases such as Harline's, the plaintiff must show that absent the attorney's negligence, the underlying suit would have been successful. Thus, the prox-

imate cause issue is ordinarily handled by means of a " 'suit within a suit' or 'trial-within-a-trial.' " 2 Mallen & Smith, *supra,* § 27.7, at 641. "The objective is to establish what the result [of the underlying litigation] *should have* been (an objective standard), not what a particular judge or jury *would have* decided (a subjective standard)." *Id.* § 27.7, at 641–42.

■ Seemingly because of this objective standard, a number of courts have concluded that "[i]f the underlying suit would have been tried to a jury, or a judge sitting as a trier of fact, ... the jury in the malpractice case should decide the disputed factual issues pertaining to the original suit." *Phillips v. Clancy,* 152 Ariz. 415, 733 P.2d 300, 306 (Ct.App.1986). In other words, the identity of the original trier of fact makes no difference; rather, "the line dividing the responsibility of judge and jury runs between questions of law and questions of fact." *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255, 1259 (1977) (en banc); *see also Helmbrecht v. St. Paul Ins. Co.,* 122 Wis.2d 94, 362 N.W.2d 118, 134 (1985). Following this line of reasoning, these courts have concluded that it is appropriate for a malpractice jury to decide how a reasonable administrative law judge should have ruled on an applicant's eligibility for Social Security disability benefits had the applicant's attorney filed a timely appeal, *Phillips,* 733 P.2d at 307; how a reasonable judge in a divorce action should have divided marital assets had the plaintiff's attorney properly established the value of the assets, *Helmbrecht,* 362 N.W.2d at 135–37; and how a reasonable probate judge should have ruled on whether a claimant was a decedent's heir had the claimant's attorney properly discovered and presented evidence and filed a timely appeal of the original adverse decision, *Chocktoot,* 571 P.2d at 1259.

While the fact versus law distinction followed by these courts has some superficial analytic appeal, we reject its application in this context. Harline seeks to have a jury determine what only a bankruptcy judge could have determined in the first instance. We see no reason why a malpractice plaintiff should be able to bootstrap his way into having a lay jury decide the merits of the underlying "suit within a suit" when, by statute or other rule of law, only an expert judge could have made the underlying decision. It is illogical, in effect, to make a change in the law's allocation of responsibility between judge and jury in the underlying action when that action is revisited in legal malpractice actions and thereby distort the "suit within a suit" analytic model. *See* 2 Mallen & Smith, *supra,* § 27.23, at 693 n. 5. To so proceed ignores and, in some cases, contradicts the public policy goals which prompted the initial assignment of decision-making authority respectively to judges and to juries on specific issues. There is no basis for abrogating those public policy goals simply because the matter arises in a legal malpractice context.

Nor do we agree with the implication, not well-analyzed by those courts applying the simplistic fact versus law distinction, that a judge sitting in a malpractice case would be any less objective than a jury in determining what a reasonable judge should have done in the underlying case.[8] We simply do not see the logical connection between ensuring an objective determination of how the underlying case should have come out and the identity of the arbiter who makes that objective determination. Rather, it makes far more practical sense to apply the rule that if the underlying case could only have been tried by a judge, then this aspect of the malpractice claim—the suit within the suit—must likewise be tried by a judge.

The next question we address, also common to both appeals, is whether both trial courts erred in considering the bankruptcy court's January 24th ruling regarding the motion to clarify its original order denying Harline's bankruptcy discharge. "[I]nadmis-

---

**8.** We note that "what a reasonable judge should have done" is not a different inquiry than "what the plaintiff should have recovered." These are identical inquiries; we do not mean to suggest that "there may be characteristics peculiar to a judge in the decision-making process." 2 Ron-

ald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 27.23, at 693 n. 9 (3d ed. 1989). Rather, we use the "reasonable judge" term to indicate that a statute or other rule of law permits only a judge to make the underlying decision.

sible evidence cannot be considered in ruling on a motion for summary judgment." *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989). Therefore, we must determine whether the two trial courts properly admitted the bankruptcy court's January 24th oral ruling.

The trial court in the Vlahos case held a pretrial hearing in May of 1994 on Harline's motion in limine to exclude the bankruptcy court ruling.[9] The transcript indicates that the trial court likened the bankruptcy judge's ruling to expert testimony. The trial court appears to have weighed the prejudicial effect of the ruling against its probativeness, as required by rule 403 of the Utah Rules of Evidence, noting that the oral ruling was not "unduly prejudicial" and "no more prejudicial than probative."[10] Thus, the trial court concluded that the bankruptcy court ruling on the motion to clarify was relevant and admissible evidence in an objective determination of how a reasonable judge might have ruled on Harline's discharge absent any alleged negligence on the part of Vlahos.

"In reviewing a trial court's ruling on the admissibility of evidence under rule 403, we will not overturn the court's determination unless it was an 'abuse of discretion.'" *State v. Hamilton*, 827 P.2d 232, 239 (Utah 1992). Thus, we must decide "whether, as a matter of law, the trial court's decision that 'the unfairly prejudicial potential of the evidence outweighs [or does not outweigh] its probativeness' was beyond the limits of reasonability." *Id.* at 239–40 (alteration in original) (quoting *State v. Ramirez*, 817 P.2d 774, 781–82 n. 3 (Utah 1991)). We conclude that both trial courts erred in considering the bankruptcy court ruling in connection with the motions for summary judgment but that the error in each case was harmless.

█ Because an objective standard applies in legal malpractice cases, virtually all authorities agree that subjective opinion testimony from the judge who presided over the original case as to how that judge would have ruled absent the alleged negligence of the attorney is improper and inadmissible. *Phillips*, 733 P.2d at 303–06; *Chocktoot*, 571 P.2d at 1258–59; *Helmbrecht*, 362 N.W.2d at 125–26; *see also* 2 Mallen & Smith, *supra*, § 27.17, at 683. Such testimony is considered inadmissible because its marginal relevance to an objective inquiry as to what the outcome of the underlying litigation should have been is substantially outweighed by the possible prejudice created when a judge, "in effect, sides with one of the litigants in an ongoing proceeding." *Phillips*, 733 P.2d at 305. Such testimony also raises ethical and public policy concerns because it creates an appearance of partiality on behalf of one of the current litigants by the judge who testifies. *Id.* In addition, permitting such testimony may produce disruption in the courts. For example, if the judge who tried the underlying case is permitted to testify in the subsequent malpractice action, the same would seem to apply to jurors when the underlying case is tried to a jury. "The specter of such a scene throws a chill down our judicial spine." *Id.* at 306; *see also* 2 Mallen & Smith, *supra*, § 27.17, at 683. We lay it to rest today.

While we express no view on the bankruptcy court's actions, we note that the oral ruling was intended to clarify an order entered five and one-half years earlier, that it was rendered without the presence of Harline's counsel, apparently withdrawn on the subsequent objection of Harline's counsel and, in its final form, contained little of the hypothetical speculation to which Harline objects. We fail to see how the January 24th ruling had much, if any, probative value. We thus conclude that what little probative value it may have had was substantially outweighed by prejudice. Therefore, each trial

---

**9.** The record does not indicate how the trial judge in the Barker and Whyte case ruled on Harline's motion to strike the January 24th bankruptcy ruling. However, because Barker and Whyte's summary judgment motion relied solely on the January 24th ruling, we must assume that the trial court in that case implicitly ruled that the January 24th ruling was admissible.

**10.** Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403.

court abused its discretion in considering the oral ruling.

However, we conclude that any error in the trial courts' admission of this evidence was harmless. " 'Harmless' errors are 'errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " *Hamilton*, 827 P.2d at 240 (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)); *see also* Utah R.Civ.P. 61; Utah R.Evid. 103(a); Utah R.Crim.P. 30(a). Put another way, " '[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.' " *Id.* (quoting *State v. Knight*, 734 P.2d 913 (Utah 1987)). The error here does not undermine our confidence in the summary judgment granted to Vlahos or to Barker and Whyte. We reach this conclusion because we agree with each trial court that Harline failed to raise any disputed issue of material fact indicating that Vlahos or Barker and Whyte caused his denial of discharge. We examine each case separately.

Turning first to Harline's malpractice claim against Vlahos, we are satisfied that the doctrine of issue preclusion, or collateral estoppel, binds Harline to the bankruptcy court's factual determination that he transferred property with the intent to hinder, delay, or defraud creditors and that he knowingly and fraudulently made a false oath, even if Vlahos negligently prepared Harline's statement and bankruptcy schedules. Issue preclusion prevents the relitigation of issues that have once been adjudicated even though the claims for relief in the separate actions may be different. *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d 873, 875 (Utah 1983). The doctrine applies only if four requirements are met:

First, the issue in both cases must be identical. Second, the judgment must be final with respect to that issue. Third, the issue must have been fully, fairly, and competently litigated in the first action. Fourth, the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party. *Madsen v. Borthick*, 769 P.2d 245, 250 (Utah 1988); *see also Noble v. Noble*, 761 P.2d 1369, 1374 (Utah 1988); *Wilde v. Mid–Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981); *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978).

Under the first requirement of issue preclusion, we must examine whether the precise issue decided by the bankruptcy court is identical to the issue presented in Harline's malpractice action against Vlahos. The bankruptcy court had to determine whether, in light of Vlahos' alleged negligence in omitting assets from Harline's bankruptcy schedules, Harline (i) intended to hinder, delay, or defraud a creditor or the bankruptcy trustee by making the four property transfers and by cashing in the Merrill Lynch account, and (ii) knowingly or fraudulently made a false oath. A brief review of the nature of bankruptcy discharge hearings and the evidence presented at Harline's hearing helps to put the precise issue before the bankruptcy court in focus.

When a creditor objects to a debtor's discharge in bankruptcy, the burden of proof is on the objecting creditor to prove by a preponderance of the evidence that the debtor acted with fraudulent intent. *In re Caldwell*, 101 B.R. 728, 732–33 (Bankr. D.Utah 1989) (mem.). However, the bankruptcy judge may deduce or infer the requisite intent from the facts and circumstances of the case. *Calder*, 907 F.2d 953, 956 (10th Cir.1990). A finding of "reckless indifference to the truth" also suffices to establish the requisite intent to defraud. *Calder*, 93 B.R. at 736 (citing *In re Tully*, 818 F.2d 106 (1st Cir.1987)). The debtor, of course, is then entitled to explain his actions so as to avoid a finding that he acted with fraudulent intent. "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts. However, the debtor's reliance must be in good faith." *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986) (citations omitted) (noting availability of defense to § 727(a)(2) fraudulent transfers); *see also Poolquip–McNeme, Inc. v.*

*Hubbard (In re Hubbard),* 96 B.R. 739, 742 (Bankr.W.D.Tex.1989) ("Bankruptcy courts have not imposed strict liability under § 727(a)(4) for omissions from schedules."); *Calder,* 93 B.R. at 737 (noting that liability for false oath should not be imposed for mistaken or inadvertent omissions). Accordingly, Harline's good faith reliance on Vlahos' advice and preparation of the statement and schedules was a plausible defense in the bankruptcy discharge hearing.

Harline did in fact raise the defense of good faith reliance at the discharge hearing. He testified that he told Vlahos about his assets, including the transfers of property to his children, and that Vlahos failed to list this information in Harline's bankruptcy statement and schedules.[11] In his subsequent motion to alter or amend the judgment denying his bankruptcy discharge, Harline asserted these same facts as well as additional legal arguments which attempted to justify the property transfers and the cashing of the Merrill Lynch account. It thus appears that Harline's sole aim in the Vlahos malpractice lawsuit is to have a jury reconsider the very issue that was decided by the bankruptcy court in 1988: namely, whether Harline acted with fraudulent intent or innocently relied on incompetent attorneys.

In this regard, we note that even if all the facts surrounding Vlahos' failure to list assets were not brought out in the bankruptcy proceedings, the issue before the bankruptcy court and the issue in Harline's malpractice case against Vlahos are nonetheless the same. "The *minimum* reach of issue preclusion beyond precise repetition of the first action is to prevent relitigation by mere introduction of cumulative evidence bearing on

a simple historical fact that has once been decided." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4417, at 157 (1981) (emphasis added). Further, "[b]road definition of the issue precluded is most appropriate as to efforts to advance new arguments as to facts that had been fixed by the time of the first litigation." *Id.* at 158. We are thus satisfied that the first requirement of issue preclusion is met because the issue Harline seeks to litigate in the Vlahos malpractice suit is identical to the issue Harline previously litigated in the bankruptcy trial.

We are equally satisfied that the remaining requirements of issue preclusion—that the judgment was final, that the issue was fully, fairly, and competently litigated in the first action, and that Harline was a party to the first action—are met here. It is undisputed that the bankruptcy court judgment is final, because it was affirmed by the United States District Court, and Harline took no further appeal. We are also convinced, pursuant to our discussion above, that the issue was fully, fairly, and competently litigated [12] and that a determination of Harline's intent in light of Vlahos' negligence was essential to the bankruptcy court's judgment. Finally, under the last requirement of issue preclusion, there is no question that Harline was a party to the bankruptcy proceeding. Thus, because all four requirements of issue preclusion are met here, Harline is bound by the bankruptcy court's factual finding that he acted with the requisite state of mind to support a denial of discharge despite Vlahos' negligent preparation of the statement of affairs and schedules.

11. Harline testified as follows: He "wasn't familiar at all" with bankruptcy rules and Sam Herscovitz of the Vlahos firm instructed him with regard to bankruptcy; he tried to give Herscovitz "the information as to my practice and my ownership of property" which Harline considered to be accurate, but Herscovitz "didn't go through everything"; Harline told Herscovitz (who had died by the time of trial) about the property transfers to his children; Herscovitz or someone from the Vlahos firm prepared the statement and schedules; Vlahos' signature was on the schedules, but Harline did not know that Vlahos was his attorney; Harline had the opportunity to look through the resulting document "but didn't look through it" and only "glanced through it" be-

cause he was "working so long and so hard in his practice"; he intended to give complete and full disclosure to his creditors; and he had no reason to believe at the time he signed the document that it contained inaccurate information. Harline also explained that he was residing at the address listed on his statement and schedules when he first met with Herscovitz.

12. We note that in his malpractice complaint against Barker and Whyte, Harline did not allege negligent representation at the bankruptcy discharge hearing or in the handling of his appeal of the judgment denying him discharge.

Thus, Harline has failed to raise a genuine issue of material fact that Vlahos proximately caused the denial of Harline's bankruptcy discharge. Harline's sole claim in these proceedings is that Vlahos' initial failure to list assets that Harline disclosed to the firm caused Harline's denial of discharge. However, "[d]emonstrating material issues of fact with respect to defendants' negligence is not sufficient to preclude summary judgment if there is no evidence that establishes a direct causal connection between that alleged negligence and the injury." *Mitchell,* 697 P.2d at 245. Under the doctrine of issue preclusion, the bankruptcy court's finding that Harline acted with fraudulent intent despite his reliance on Vlahos is binding. That finding defeats the causation element of Harline's negligence claim against Vlahos, thereby defeating the malpractice claim. *See Lane v. Sullivan,* 900 F.2d 1247, 1250–51 & n. 5 (8th Cir.) (holding that earlier judgment that plaintiffs understood a stock transfer precluded malpractice claim against attorney for misrepresenting or failing to represent true nature of transfer), *cert. denied,* 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 101 (1990); *Falconer v. Meehan,* 804 F.2d 72, 75–76 (7th Cir.1986) (bankruptcy court finding that attorney advised client of contents of dissolution agreement precluded relitigation of issue in malpractice action); *see also Standage v. Jaburg & Wilk, P.C.,* 177 Ariz. 221, 866 P.2d 889, 895–96 (Ct.App. 1993) (holding that bankruptcy court ruling that debtor's first attorney did not commit malpractice by failing to inform debtor of deadline precluded same claim in state court against different attorneys). Because Harline is precluded from relitigating Vlahos' failure to list Harline's assets, Harline has not presented a genuine issue of material fact that would enable him to prove in a malpractice trial that he would have won the underlying "suit within a suit." *See Lane,* 900 F.2d at 1250 n. 5; *Standage,* 866 P.2d at 896. Even though the trial court came to this conclusion from a different route, we affirm its grant of summary judgment in favor of Vlahos.

 Turning to Harline's malpractice claim against Barker and Whyte, we conclude that the evidence which Harline submitted in response to Barker and Whyte's motion for summary judgment not only fails to raise an issue of material fact, but leaves no room for reasonable minds to conclude that Barker and Whyte could have proximately caused the denial of Harline's bankruptcy discharge.

Harline's sole claim against Barker and Whyte is that they negligently failed to amend his statement of affairs and schedules. Barker and Whyte's defense in their motion for summary judgment was that no amendment could have cured Harline's original fraudulent transfers and false statement and schedules. Barker and Whyte submitted the bankruptcy court's January 24th ruling as the only evidence supporting their defense. First, we reject any implicit argument that the bankruptcy court's original findings regarding Harline's fraudulent intent are binding on Harline in his suit against Barker and Whyte under the doctrine of issue preclusion. There is no evidence that Barker and Whyte's failure to amend Harline's statement and schedules was raised in Harline's discharge hearing before the bankruptcy court. Further, Whyte represented Harline at the discharge hearing. Under these circumstances, issue preclusion does not apply. *See generally Bucci v. Rustin,* 227 Ill.App.3d 779, 169 Ill.Dec. 810, 592 N.E.2d 297 (1992).

Second, we reject Barker and Whyte's express argument, based on the bankruptcy court's January 24th ruling, that amendments could not have cured Harline's false statement of affairs and schedules. We, like the court of appeals, cannot say as a matter of law that timely amendments would not have prevented the denial of Harline's discharge. *See Harline v. Barker,* 854 P.2d at 602. However, we disapprove of the court of appeals' assertion that "[c]ertainly an amendment would have removed the section 727(a)(4)(A) ground for denial of discharge as the schedules would no longer be false." *Id.* This assertion is simply untrue. Amendments do not negate the original false statement or schedules. Rather, they help negate a finding that the debtor filed the false documents with the intent to defraud. *See New World Mktg. Corp. v. Garcia (In re Garcia),* 88 B.R. 695, 705 n. 19 (Bankr.E.D.Pa.1988)

("The existence of sanctions for failure to disclose assets would serve no purpose if deficiencies could simply be remedied any time parties in interest call attention to them."). In short, the fact that a debtor files amendments is only one of many factors a bankruptcy court considers in determining whether the debtor initially acted with fraudulent intent.

Consequently, under this same analysis, even if the bankruptcy court's January 24th ruling was admissible, it could not have established as a matter of law that amendments would have had no effect on Harline's bankruptcy discharge. As discussed earlier in this opinion, bankruptcy courts do not impose strict liability on debtors who file false statements and schedules; rather, they make a determination based on the facts and circumstances of the case. The failure to file timely amendments is simply one fact which indicates fraudulent intent. *Caldwell,* 101 B.R. at 739. Accordingly, even if the bankruptcy court's January 24th ruling was admissible, that evidence could not have eliminated the factual question of whether a reasonable bankruptcy judge would have denied Harline's discharge had he submitted timely amendments.

Because we cannot decide as a matter of law that timely amendments would have had no effect on the outcome of Harline's discharge trial and because we hold today that the bankruptcy court's January 24th ruling is inadmissible, we ordinarily would remand on the grounds that Barker and Whyte, as the moving parties, have failed to meet their burden of demonstrating that there are no disputed issues of material fact regarding proximate cause.[13] *Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229, 1233 (Utah 1995); *K & T, Inc.,* 888 P.2d at 628. Unless the

moving party meets its initial burden to present evidence establishing that no genuine issue of material fact exists, "the party opposing the motion is under no obligation to demonstrate that there is a genuine issue for trial." *K & T, Inc.,* 888 P.2d at 628; *see also* Utah R.Civ.P. 56(e); *cf. Thayne v. Beneficial Utah, Inc.,* 874 P.2d 120, 124 (Utah 1994). On the other hand, we cannot turn a blind eye to the nonmoving party's evidence when that party chooses to respond to the summary judgment motion. In this case, Harline's own evidence compels us to affirm the trial court's grant of summary judgment. In light of that evidence, we conclude that no reasonable person could find that Barker and Whyte proximately caused Harline's injury.

Both in response to Barker and Whyte's motion for summary judgment and on appeal to this court, Harline relied on Whyte's answer to an interrogatory to undercut Barker and Whyte's assertion that amendments would have made no difference to the outcome of Harline's discharge hearing. Whyte's answer contained the following:

> [I]n the summer of 1988, defendant Whyte determined that Dr. Harline's statement of affairs and schedules were inadequate as to their content, which determination defendant Whyte related to [Harline]. Further, the risk involved in going ahead with the [discharge] trial without amending the schedules was specifically related to [Harline].... [S]ubsequent to May, 1988, ... *Dr. Harline specifically instructed Mr. Whyte not to file amended statements or schedules.*

(Emphasis added.) Both at the trial court and on appeal, Harline has not denied instructing Whyte not to amend the schedules, nor have we found any record evidence supporting a denial even if one had been made.[14]

---

13. Barker and Whyte argue that even if the bankruptcy court's January 24th ruling was improperly admitted, under the reasoning of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the burden is on Harline to produce some evidence showing that Barker and Whyte proximately caused the denial of Harline's discharge. *See id.* at 323–24, 106 S.Ct. at 2552–53. This court has not previously adopted the reasoning of the majority opinion in *Celotex,* which is not binding on us as a matter of law, and declines to do so today.

14. We note that Harline filed a supplemental affidavit in response to Barker and Whyte's first motion for summary judgment in which he said, "Whyte ... repeatedly advised [Harline] that amended schedules and statement of affairs had to be prepared and filed, but Mr. Whyte never undertook to prepare or file such schedules or statement of affairs." When asked in a deposition whether he instructed Barker and Whyte to fix his statement and schedules, Harline replied, "I don't recall whether I did or not." In Harline's response to Barker and Whyte's supple-

As a result, we must conclude that it is undisputed that Harline directed Whyte not to amend the statement of affairs and schedules. This conclusion should come as no surprise to Harline, because Barker and Whyte in their brief specifically discussed Harline's instruction to Whyte not to amend the statement of affairs and schedules, and Harline in his reply brief did not mention the evidence, let alone dispute it.

This evidence demonstrates that Harline chose not to pursue his available legal remedy of amending his statement of affairs and schedules prior to his bankruptcy discharge hearing in August of 1988. " 'We do not believe it would be wise judicial policy to allow one party to create legal liability in another by a voluntary exercise of the complaining party's own personal business judgment not to seek to protect his rights in the legal forums provided him.' " *Horn v. Moberg*, 68 Wash.App. 551, 844 P.2d 452, 456 (1993) (holding client's independent, voluntary decision to dismiss products liability suit precluded finding that attorney's alleged negligent preparation of case proximately caused client's injury) (quoting *King v. Seattle*, 84 Wash.2d 239, 525 P.2d 228, 236 (1974)). Admittedly, late-filed amendments may not have been as effective as earlier-filed amendments in demonstrating Harline's lack of intent to defraud, but we cannot say that they would have been useless. In short, Harline's refusal to amend his statement and schedules precludes a finding that Barker and Whyte proximately caused the denial of Harline's bankruptcy discharge. Accordingly, the trial court correctly granted Barker and Whyte's motion for summary judgment.

In sum, we affirm summary judgment in the Vlahos action because Harline is precluded from relitigating Vlahos' failure to list assets in Harline's original statement of affairs and schedules. Without the ability to relitigate this issue, Harline cannot prove that Vlahos' negligence proximately caused the denial of Harline's bankruptcy discharge. We also affirm summary judgment in the Barker and Whyte action because Harline's

ment to their first motion for summary judgment, Harline denied that Whyte advised him of the need to file amended schedules, but he filed no

evidence that he instructed his attorneys not to amend his statement and schedules precludes a finding that Barker and Whyte's negligence proximately caused the denial of Harline's discharge.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur in Chief Justice ZIMMERMAN's opinion.

affidavit and pointed to no evidence to support the denial.